## GLENN v. OERTEL CO.
### No. 7388.

Circuit Court of Appeals, Sixth Circuit.
June 8, 1938.

Helen Carloss, of Washington, D. C. (Robert H. Jackson, Sewall Key and Courtnay C. Hamilton, all of Washington, D. C., and Bunk Gardner and Oldham Clarke, both of Louisville, Ky., on the brief), for appellant.

Grover Sales, of Louisville, Ky. (Grover Sales and E. J. Wells, both of Louisville, Ky., on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

The issue here depends upon a construction of certain language found in Sec. 215 (f) of the National Industrial Recovery Act, 48 Stat. 195, 207, 208. It arose out of an action at law brought by appellee against appellant to recover an alleged overpayment of income and excess profits taxes for the year 1933. Following the practice in Kentucky, appellant filed a general demurrer to the petition, which was overruled. Appellant declined to plead further and judgment was rendered upon the claim.

The petition alleged that on July 13, 1933, pursuant to the provisions of Sec. 215 of the Act, appellee filed upon Form 707 a capital stock tax return for the year ending June 30, 1933, showing the total value of its stock to be $78,104.88; that shortly thereafter and within the extension granted for filing its return, is officers discovered that a mistake had been made and thereupon prepared and filed a corrected return on

September 1, 1933, declaring a value of $828,104.84 for its stock, which the Commissioner rejected; that for the taxable year 1933, appellee reported an income of $92,759.53 and showed an excess profits tax of $4,149.82 as being due; that it paid this amount and $206.25 of its income tax under protest because the Commissioner had declined to accept the corrected corporate stock return under which these amounts would not have been due; and that its claim for refund was disallowed. Following this it brought suit to recover the alleged overpayments.

Section 215(a) of the Act imposes upon every domestic corporation a capital stock tax *for each year ending June 30.*

Clause (d) thereof provides that every corporation liable for tax under this section shall make a return under oath *within one month after the close of the year* (June 30) *with respect to which such tax is imposed;* that the Commissioner with the approval of the Secretary may set up rules and regulations prescribing the form and content of the return, as well as providing for an extension of time, not to exceed sixty days, for making the return.

Clause (f) provides that *for the first year ending June 30 in respect of which a tax is imposed by this section* the adjusted declared value *"shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended)* * * *."* (Italics ours.)

■ The crux of the controversy is found in the quotation from clause (f). Appellant contends that the language is plain; that appellee's return filed July 13 was its *first return* under clause (d) of Sec. 215 and its corrected return on September 1 was therefore prohibited. Taken literally, the return of July 13 was appellee's "first return," when thought of in connection with its corrected return; but a thing may be within the letter of the statute and not within its meaning. It is the intent of the statute that constitutes the law (Marsh v. Preferred Acc. Ins. Co., 6 Cir., 89 F.2d 932, 934) and in determining the purpose of the phrase all related portions of the Act must be considered.

■ Clause (f) of Sec. 215 provides that for any subsequent year, ending June 30, the adjusted declared value of the capital stock must be the original declared value with certain bona fide changes in capital struc-

ture permitted therein. The Act contemplated that during the first year, 1933, the corporation, within the permissible period, must choose a base and adhere to it, not only during that year but the following years. Both the capital stock tax and the excess profits tax (Sec. 216(a), 48 Stat. 208) not only for 1933, but for subsequent years, depended upon the fidelity with which the base or the original value of the capital stock was reached and declared.

For this reason Congress recognized the importance not only to the taxpayer but to the Government of requiring that the first return should conform to the facts. This is indicated not only by the provision that it should be made in such manner as the Commissioner might prescribe but by the authorization granted the Commissioner to allow a liberal extension of the filing period.

■ In passing upon appellant's demurrer, the District Court was bound to accept as true the pleading that through a mistake the declared value in appellee's return of July 13 was grossly incorrect. We cannot think that Congress intended an untrue return to be unamendable for no better or more substantial reason than that it was first in point of time, when the extension granted by the Commissioner had not expired when the correction was filed. Such construction logically followed permits the Government to lay a tax upon appellee's errors rather than its income. It goes further than that and destroys the "primary object" of providing the excess profits tax in Sec. 216(a) which was to induce corporations to declare a fair or reasonable value upon their stock. See Senate Committee's Report No. 114 and the Conference Report No. 13185, p. 33. Surely no such harsh and far reaching results were intended. If they were, serious constitutional questions arise.

■ We think that the correct view, which accords with the principle that "in construing tax laws all doubt must be decided in favor of the taxpayer" (Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211), is, that the incorrect, invalid return springing from an honest mistake would not support any fair levy or assessment and that the Congress did not intend to prohibit its correction within the permitted period; that "the taxpayer should be permitted to do what he had the right to do in the first instance" (Lucas v. Sterling Oil & Gas Co., 6 Cir., 62 F.2d 951, 952); and that the corrected return of September 1 be adjudged the "first return under this section" as dis-

tinguished from returns of subsequent years which were to be based thereon. Emphasis should be laid upon the necessity of a correct return for the first year. This neither penalizes appellee nor takes away from appellant any substantial right. It places appellee upon an equal footing with all similar taxpayers who file a single corrected return within the permissible limit. We are not unaware of certain language in William B. Scaife & Sons Co. v. Driscoll, 3 Cir., 94 F.2d 664, but it does not appear from the opinion in that case that the question of legislative intent was considered.

The judgment of the District Court is affirmed.