**ALLIED AGENTS, Inc., v. UNITED STATES.**

No. 44038.

Court of Claims.

Feb. 6, 1939.

Charles M. Trammell, Jr., of Washington, D. C. (C. M. Trammell, of Washington, D. C., on the brief), for plaintiff.

George H. Foster, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, and WHALEY, Judges.

GREEN, Judge.

The material facts set forth in the petition are as follows:

The plaintiff, a corporation, filed capital stock tax returns for the years ending June 30, 1933, 1934, 1935, and 1936, declaring the value of its capital stock at $1,500,000, $800,000, $886,817.66, and $1,400,000, respectively, and paid taxes thereon in accordance with the statute made and provided. Later and in due time, plaintiff filed claims for the refund of the taxes so paid. These refund claims were rejected and the plaintiff now brings this suit alleging that the statute imposing these taxes is unconstitutional and void. The defendant demurs to the petition on the ground that no cause of action is stated therein.

Section 215 of Title 2 of the National Industrial Recovery Act, 48 Stat. 195, 207, imposes an annual tax on domestic corporations of $1 for each $1,000 of the adjusted declared value of its capital stock, and subdivision (f) of this section further provides that— " * * * the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section * * *." The same subdivision provides for an adjustment in this declared value for changes in the capital structure, but makes no provision for adjustment for changes resulting from the vicissitudes of business other than as stated above.

Section 216(a) imposed an excess-profits tax upon the net income of every corporation taxable under section 215 equivalent to 5 per cent of such portion of its net income for such income-tax taxable year as is in excess of $12\frac{1}{2}$ per cent of the adjusted declared value of its capital stock, as determined in section 215.

The capital stock tax and excess-profits tax were reimposed by sections 701 and 702 of the Revenue Act of 1934, 26 U.S.C.A. §§ 1358, 341, without making any change material to the case now under consideration except that the declaration which is to be used as the basis of the 1934 and 1935 tax was required to be made within one month after the close of the fiscal year

ending June 30, 1934, and for the year 1934 the declared value was the basis of the tax. For the year 1935, the basis was the declared value for 1934 adjusted for certain changes in the capital structure not necessary to mention here. Section 105 of the Revenue Act of 1935, 26 U.S.C.A. § 1358a, made another change and permitted a new declaration for 1936.

Under the revenue act of 1935, § 106, 26 U.S.C.A. § 342, the excess-profits tax rates upon the net income of corporations subject to the capital stock tax are 6 per cent on such portion thereof as is in excess of 10 per cent and not in excess of 15 per cent of the declared value; the portion of the net income in excess of 15 per cent of the adjusted declared value is taxed 12 per cent.

The plaintiff contends that the capital stock tax is uncertain, discriminatory, arbitrary, and deprives it of its property without the equal protection of the law; and in particular, that it raises a conclusive presumption that the declared value is the actual value and that the actual value for 1935 is the same as the declared value for 1934. The provisions of the capital stock tax are also said to constitute an unconstitutional delegation of legislative authority to the taxpayer without any standard for its exercise.

■ A fundamental error in the position taken by plaintiff, as we see the case, is that the capital stock tax is treated as having no connection with the excess-profits tax and the dependence of the excess-profits tax upon the declared value used in the capital stock tax is considered as having no bearing in the determination of the case. We think an examination of the provisions of these two taxes and a consideration of the problem presented to Congress show clearly that the capital stock tax is an adjunct of the excess-profits tax, and that its provisions were framed with a view to the use of what is termed the "declared value" as the basis of the excess-profits tax. It follows that the objections raised by plaintiff to the capital stock tax should not be considered as if that tax were alone and segregated from the excess-profits tax but the two taxes should be considered together and their validity must depend upon the results of their joint operation and the joint effect upon the taxpayer.

The original excess-profits tax was imposed at the time of the World War and repealed in 1921, although it would seem that nothing could be more fitly made the subject of taxation than excess profits. The debates in Congress show there were two important reasons for its repeal. One was that the original excess-profits tax was imposed in accordance with the percentage of profits upon the statutory invested capital of the taxpayer and both the Bureau of Internal Revenue and the taxpayer had the greatest difficulty in determining the amount of invested capital which was made the basis of the tax. This in fact constituted about the greatest task that the Bureau of Internal Revenue had. The other reason was that seldom if ever did the tax work out fairly and equitably as between the different taxpayers. Being based upon the amount of capital originally invested, an old corporation, whose assets and actual capital had multiplied in value many times over, would pay a very much higher tax than a recently formed corporation which had bought out other companies at a high valuation and consequently had a much greater invested capital with no greater capital assets, notwithstanding the two companies manufactured the same product which they sold at the same price. Indeed, so great was the disparity that sometimes one that sold at a lower price paid the higher taxes. This was because the tax was based and computed upon the amount of capital originally invested and not on the value of the assets employed or used in making the profits taxed. The system was such that the lower the amount of invested capital the higher became the rate of the tax. Nothing was added to the base of the tax on account of the growth of capital either in the form of tangible assets or goodwill. The discrimination was so great in many cases that it was one cause for the enactment of the statute providing for special assessments. Manifestly this was unfair, inequitable, and in one sense discriminatory. Nevertheless the old statute was held to be constitutional.

■ Congress had the right to establish a basis for the capital stock tax if the Constitution was not infringed in so doing, and we think it was not.

The form of the statutory provisions now under consideration shows plainly that Congress wished and intended to tax excess profits but desired to take a new basis for the computation of the tax that would present no difficulties in determining the amount of the original investment or the

value of capital stock so that the tax would be easily administered by the Bureau of Internal Revenue and so easily computed by both the Government officials and the taxpayers that there could be no dispute about its amount and no uncertainty in its application. If we consider the two taxes independently of constitutional questions we find that they are very simple—perhaps the most simple of any of the taxes that depend directly or indirectly upon the income of the taxpayer, and when the two taxes are taken together we think it can be shown that they operate with a greater degree of fairness and equity than the old excess-profits tax. When we examine the constitutional questions that have been raised with reference to them, we find that the two taxes are inseparable and must be considered together.

█ It is argued that the capital stock tax is purely arbitrary, and discriminatory to a degree that renders it invalid. Possibly if this tax were viewed alone and by itself, without making it a part of the plan for the excess-profits tax and considering the result of the two taxes, this argument might require different consideration. But as we have already shown, the two taxes must be considered together. The main purpose of the new plan for levying these two taxes was to do away with the difficult and innumerable controversies in determining the actual value of invested capital or capital stock; let the taxpayer make a declaration of the value of the capital stock; and then apply an excess-profits tax framed in such a way that there would be an inducement to the taxpayer to place a fair and reasonable value on the stock and if it did not, would so increase the excess-profits tax that little or nothing would be gained by putting an unreasonably low value thereon. This plan made the taxes self-adjusting and, as before stated, Congress had the right to prescribe the basis for the two taxes. It prescribed the declared value as this basis. We think it is clear that there is nothing arbitrary in permitting the taxpayer to make his election as to the amount he would declare. Congress simply waived the right to revise this declaration. It is urged, however, that this provision had a discriminatory effect as to other taxpayers and that when the taxpayer declared the value of the stock it fixed the amount of its tax. It is further argued that in so permitting the taxpayer to fix the amount of the tax, Congress delegated legislative powers and made the tax so discriminatory that

for both or either of these reasons it was rendered invalid. The fact, if it be a fact, that the taxpayer is given by the statute here involved the right to do some act which will affect the amount of its tax in one of its phases, or cancel it entirely, will not by itself and alone render the statute imposing the tax invalid. This often occurs under statutes the constitutionality of which never has been doubted. For example, a taxpayer who would otherwise be chargeable under other taxing provisions with a tax on a certain amount of income may sell stocks which he owns at a loss and use the loss to reduce or entirely cancel the amount of his taxable income. Moreover, except in very unusual situations such as no statute can guard against, the taxpayer cannot control the taxes that it will pay under the two statutes under consideration by its statement as to the declared value. These statutes are so framed that the higher the declared value of the capital stock the lower will be the excess-profits tax, and the lower the declared value the higher will be the excess-profits tax. In this way when the two taxes are considered together, as they should be, they are as stated above self-adjusting both as to the taxpayer itself and in comparison with what is paid by others under them.

Counsel in another and similar suit has cited a supposed case as an example of the discriminations that might result. It is possible that such a case might exist but so improbable that it is reasonably safe to say nothing like it ever did or ever will come to pass. Under the supposition made, it is stated that the declared value of the taxpayer's capital stock was $500,000. It is supposed that this represented the true value of the stock at the beginning of the year for which it was declared. Then it is supposed that another corporation, whose capital stock was worth $1,000,000, had a net income for the same year of $62,500, and it is said it could under the law declare a capital stock value of $500,000, pay the same capital stock tax the first taxpayer paid on half that amount of capital, and escape entirely the excess-profits tax. There are inconsistencies in this hypothetical case. In the first place it should be noted that the tax does not apply to corporations that are not doing any business. The capital stock of a corporation doing business which usually and ordinarily had a net income above taxes of only $62,500 would hardly be worth $1,000,000 as counsel supposes. But if it were worth that amount

and had so small an income no injustice has been done in not requiring it to pay an excess-profits tax. Moreover, the supposition that it would declare the value of its stock to be only half of its actual value is an unreasonable hypothesis as well as the supposition that its profits would be so small. The declaration must be made at the beginning of the year when the taxpayer can only make an estimate as to what the net income will be and there are few corporations that could or would take the risk of so reducing the declared value of their capital stock as to subject themselves to the likelihood of having very heavy excess-profits taxes imposed. The statutes imposing these two taxes are so drawn that there is an inducement, as commentators have noted, to declare the value of the stock at approximately its full amount or a little more in order to avoid any chance of having heavy excess-profits taxes imposed. In the hypothetical case presented the smaller corporation, by declaring what was assumed to be the full value, may have and probably did escape excess-profits taxes which it would otherwise have paid, while the larger corporation gained little in the excess-profits taxes by reducing the declared value. Counsel has presented no case of undue discrimination that actually existed but merely a hypothetical case based on a supposition which is contrary to the manner in which the act works out in practice. There are many taxes as to which hypothetical cases can be made up which will present, as between taxpayers, a strong discrimination; but in actual practice the two taxes under consideration are much more likely to work out fairly and with less discrimination than the old excess-profits tax which seldom if ever operated without more or less discrimination and often compelled one taxpayer having the same amount of profits as another to pay many times more taxes than a competitor which was using no greater amount of capital.

It is easy to cite examples of cases in other fields of taxation where the discrimination is far more gross than is possible to even imagine could exist under the statutes now in controversy. Perhaps the most conspicuous example of discrimination is found in the administration of State taxes on intangible property (notes and securities of various kinds). This discrimination has led to these taxes being abolished in some States and an income tax or some other tax substituted instead. But most of the States of the Union still keep the tax upon intangible property under which the taxpayer makes a return of the value thereof and the usual practice is to accept this return without any consideration of whether it is the real value of the securities to be taxed. The result has been that a taxpayer having a comparatively small amount of intangible property, of which he declares the value with a reasonable degree of accuracy, will often pay far more than some very wealthy resident of the same community who makes a declaration of the value of his intangibles in a small amount and who ought to pay many times more than the other party. This gross discrimination has been a matter of common knowledge. It has often been the subject of public discussion and its gross inequities referred to by writers on taxation. These conditions have existed for more than a century, but so far as we are aware no claim has ever been made that the statute was invalid by reason thereof except in an action commenced some years ago in the city of Chicago wherein it was sought to enjoin the collection of the tax on account of this discrimination, which was notorious in that city; but the court to which the matter was presented dismissed the petition. In such instances the tax collecting officials had authority to review the valuation stated by the taxpayer but the statute also permitted them to waive or abandon this right. In that case the waiver of the right to review was accomplished by the officials; in the case before us, it is provided as a matter of policy by the statute. This difference in procedure does not affect the result.

In the case of La Belle Iron Works v. United States, 256 U.S. 377, 392, 41 S.Ct. 528, 532, 65 L.Ed. 998, it is said with reference to taxation in general: "The difficulty of adjusting any system of taxation so as to render it precisely equal in its bearing is proverbial, * * *."

Different taxpayers present an almost infinite number of varying conditions and it is impossible to adjust many taxes so that they will apply with uniformity to each and every taxpayer. Taxation is not an exact science and discrimination cannot always be avoided. The ideal tax would be one which when applied always operated with absolute equality between taxpayers. But while this ideal should be sought it is seldom attained, and the difficulty is greatest when framing taxes in accordance with ability to pay. No absolute rule can be laid down prescribing the degree of uniformity required, but it is safe to say that

if it is reasonable considering the general nature of the tax which is applied, the statute will not be invalid. We are clear that when the self-adjusting principles of the two taxes are considered the results of their application will show a reasonable degree of uniformity, fairness and equity between the taxpayers. It would be impossible to adjust the system of applying the capital stock tax and the excess-profits tax "so as to render it precisely equal in its bearing."

█ It is urged that the statute raises a conclusive presumption that the declared value is the actual value. We think this is clearly erroneous. The taxpayer itself is permitted to name the value. In other words, it elects what value it will fix as the basis of the tax. Instead of presuming that the declared value is the actual value, the actual value is immaterial. It has already been shown that the form of the statute indicates quite clearly that it was the intention of Congress to eliminate all questions as to value by permitting the taxpayer to declare a value which could be changed neither by the taxpayer nor the defendant. There is nothing arbitrary in permitting the taxpayer to elect the amount it would declare and precluding either party thereafter from making a change in the amount elected, nor do we think there is anything discriminatory in these provisions.

█ It is also contended that the statute permits the taxpayer to fix the amount of the tax and thus delegates to it legislative powers. But nothing that the taxpayer does or can do affects anyone but itself. The corporation performs no legislative duty in making the election or choice of the amount which it will declare, and the Congress is not exceeding its power in granting to the taxpayer the right of election as to the amount to be declared unless it results in so gross and arbitrary a discrimination between the taxpayers as to invalidate the tax. It is said that there is no standard from which to determine the basis of the tax but the word "standard" as used in this connection, as we understand it, pertains simply to a definite method of ascertaining the tax which is clearly pointed out by the statute. It has already been shown that the fact that the acts of the taxpayer in some measure determine the amount of the tax it will pay does not invalidate the tax. Moreover, in the case before us, the taxpayer cannot under any reasonable hypothesis absolutely determine the amount of its taxes which will depend upon its profits as ascertained at the end of the year. In attempting to lessen its taxes it may actually increase the amount thereof as many taxpayers have found. All the taxpayers have an opportunity to obtain a fair and reasonable rate for the tax which is self-adjusting except in very unusual or extraordinary circumstances.

The tax has been examined and considered at three different sessions of Congress, and until recently no question has been raised as to its constitutionality. This matter was not even mentioned at any of the hearings on the Revenue Bills. The report of the Senate on the revenue bill of 1934 states with reference to the capital stock and excess-profits taxes that these taxes have been certain in yield (not uncertain as is here argued), easily borne by the taxpayer, and easily administered by the Bureau of Internal Revenue; that the only serious criticism brought to the attention of the committee is that certain taxpayers having fiscal years ending on July 31, or later in the year, might be obliged to file two returns, and that otherwise the taxes have been "very satisfactory in their operation up to date." This defect was remedied by the new bill and a new opportunity was given to declare the value of a corporation's capital stock for the year ending June 30, 1934, which the committee said met any serious charge of unfairness. The committee report also stated that "a reasonable original declared value is assured by means of the excess-profits tax which is based on the relation of the net income of the corporation to such declared value." No claim has ever been made to Congress that in actual practice the bill worked unfairly or unjustly except in some minor matters which Congress has corrected, and in respect to the value declared in one year being made the basis of the tax for another year. There was no contention or even suggestion that any of these matters, or any other, rendered the bill unconstitutional. The taxes under consideration appear to us to have the merits of being just in their inception, "easily paid and easily administered," and in practice working with a high degree of fairness and equality considering the difficult subject involved. It seems to us that they ought not to be declared unconstitutional because cases can be imagined in which they might work unfairly.

█ It is specially urged in the instant case that the capital stock tax of 1935,

being computed on the declared value for the previous year, is based upon mere supposition or guess and therefore has no proper foundation. The argument at first glance seems plausible and might be given weight if the actual value of the stock were sought instead of an amount upon which the taxpayer states he is willing to be taxed in connection with the excess-profits tax. But as we have seen before, the statute does not require the actual value to be stated, nor does it permit either party to amend the return to show the actual value. It merely requires that the plaintiff shall elect the value which it will declare. The declaration also, as stated above, will be made with a view to the excess-profits taxes that may be imposed, and for the year 1935, like the other years, the amounts of the two taxes will be self-adjusting.

It is argued in another case before this court that section 215 of the National Industrial Recovery Act was unconstitutional and invalid in that the National Industrial Recovery Act was itself unconstitutional and because the tax was levied for a specific purpose and not for general revenue. This point is not raised in the instant case but as it may be brought up later on we think it well to pass on it at this time.

■ Title 1 of the National Industrial Recovery Act, 15 U.S.C.A. § 701 et seq., was held invalid in the case of the Schechter Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 L.R.A. 947. But as far as we are aware it has never before been contended that Title 2 was unconstitutional. Section 209 thereof, 48 Stat. 206, provided that "the President is authorized to prescribe such rules and regulations as may be necessary to carry out the purposes of this title." This is a form often used in the statutes and its use does not render a statute unconstitutional. Without reviewing the decision in the Schechter Case, supra, we think it is clear that it has no application to Title 2 of the National Industrial Recovery Act.

■ It is said that subsection (c) of section 201 of Title 2, 40 U.S.C.A. § 401(c) provides—"(c) All such compensation, expenses, and allowances shall be paid out of funds made available by this Act [chapter]," and that the funds made available included the capital stock tax provided in section 215. It is contended that this provision in Title 2 of the 1933 capital stock tax statute shows that the tax was levied for a specific purpose and not for general revenue and such a provision is beyond the power of Congress.

What Congress did by the provision quoted above was merely to make the revenue produced available for certain purposes. Clearly Congress had power under the Constitution to do this. If the funds produced by the tax were made available for specific purposes by another statute, no one would question the authority of Congress to so provide and the result is exactly the same when such a provision is inserted in the taxing act itself. The case of United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, and other cases cited in support of the contention stated above are not in point. In the Butler Case, it appeared that the tax was imposed as part of a "plan to regulate and control agricultural production, a matter beyond the powers delegated to the federal government" [page 320] and that the tax was inseparable from this plan. The situation in the case before us is not at all similar. The funds raised by the tax are not to be used for any unconstitutional purpose, for we are here concerned only with Title 2. The two taxes were both levied for revenue purposes and have been quite successful in that respect. We find nothing in the provision last discussed that affects the validity of the tax.

It will be observed that the petition does not allege that an honest mistake was made in any of the returns under consideration or that it was sought to file an amendment to a return within the time for amending returns generally as was the case in Glenn v. Oertel Co., 6 Cir., 97 F.2d 495, and the opinion in that case consequently has no application to the one before us. The contention of the plaintiff is simply that the act is unconstitutional for reasons which we have considered and deemed not well founded.

Conceding for the sake of the argument that the objections to the statute raised by the plaintiff present some difficult and doubtful questions, we think under such circumstances the doubt should be resolved in favor of the constitutionality of the act and accordingly so hold.

It follows that the demurrer should be sustained and the petition dismissed. It is so ordered.