**KENTUCKY FIRE BRICK CO. v. GLENN,**
Collector of Internal Revenue.

District Court, W. D. Kentucky,
at Louisville.
July 25, 1940.

Chas. G. Middleton and Crawford, Middleton, Milner & Seelbach, all of Louisville, Ky., for plaintiff.

Eli H. Brown, III, U. S. Dist. Atty., of Louisville, Ky., for defendant.

MILLER, District Judge.

This action is before the Court on the defendant's motion to dismiss the complaint in that it fails to state a claim upon which relief can be granted.

The plaintiff, the Kentucky Fire Brick Company, brought this action against Seldon R. Glenn, Collector of Internal Revenue for the District of Kentucky, to recover capital stock taxes paid by it to the defendant under the several statutes imposing such taxes for the taxable years ending June 30, 1933, 1934, 1935 and 1936, in the respective amounts $850, $850, $853.15 and $720. Claims for refund of all of the above taxes were filed with the Collector on or about June 30, 1937, based upon the ground that the laws under which said taxes were imposed were unconstitutional and void. The claims for refund were denied by the Commissioner of Internal Revenue on August 11, 1937 and this action was filed on August 9, 1939.

The petition sets out the filing of the capital stock return and the payment of the tax disclosed thereby for each of the years in question, the filing of the claim for refund, the denial of such claims and then alleges that the acts imposing a capital stock tax, and the acts imposing an excess profits tax in relation to the capital stock tax, "are unconstitutional and void for the reasons, among others, that said statutes violate the provisions of the Fifth Amendment to the Constitution of the United States to the effect that no person shall be deprived of 'property, without due process of law; nor shall private property be taken for public use, without just compensation'; and that said taxes are so arbitrary as to amount to confiscation and are so wanting in basis for classification as to produce gross and patent inequality."

The statutes involved in this action are Sections 215 and 216 of Title 2 of the National Industrial Recovery Act, 48 Stat. Chap. 90, pages 207, 208, applicable to the capital stock tax year ending June 30, 1933;

Sections 701 and 702 of the Revenue Act of 1934, 26 U.S.C.A.Int.Rev. Acts, pages 787, 789, applicable to the capital stock tax years ending June 30, 1934 and June 30, 1935; and Sections 105 and 106 of the Revenue Act of 1935, 26 U.S.C.A.Int.Rev. Acts, pages 798, 800, applicable to the capital stock tax years ending June 30, 1936 and June 30, 1937. Section 215 of the National Industrial Recovery Act, Section 701 of the Revenue Act of 1934 and Section 105 of the Revenue Act of 1935, each imposes a tax for each year ending June 30, upon every domestic corporation "with respect to carrying on or doing business for any part of such year an excise tax of $1 for each $1,000 of the adjusted declared value of its capital stock."

Each of said Sections provides that for the first year in respect of which the tax is imposed "the adjusted declared value shall be the value, as declared by the corporation in its first return under this section (which declaration of value cannot be amended), as of the close of its last income-tax taxable year ending at or prior to the close of the year for which the tax is imposed by this section * * *."

As to subsequent years, each of said sections provides that the adjusted declared value in the case of a domestic corporation shall be the original declared value plus the cash and fair market value of property paid in for stock or shares, paid-in surplus and contributions to capital, and in the case of the National Industrial Recovery Act the "earnings and profits" of the corporation, and in the case of the later acts the net income of the corporation plus certain tax exempt income; and minus the value of property distributed in liquidation to shareholders, distributions of earnings or profits, and in the case of the National Industrial Recovery Act "deficits, whether operating or non operating", and in the case of the later Acts the excess of the deductions liable for income-tax purposes over its gross income.

Section 216 of the National Industrial Recovery Act, Section 702 of the Revenue Act of 1934 and Section 106 of the Revenue Act of 1935 impose an excess profits tax upon the net income of every corporation subject to the capital stock tax based upon the income of the income tax taxable year ending after the close of the capital stock tax year. Under the National Industrial Recovery Act and the Revenue Act of 1934, the rate of tax was 5% on all incomes in excess of 12½% of the "adjusted declared value" of the capital stock tax year ending prior to the income tax year. Under the Revenue Act of 1935, the rate was 6% upon that portion of the net income in excess of 10% of such adjusted declared value and not in excess of 15% thereof, and 12% on all net income in excess of 15% of the adjusted declared value.

Plaintiff contends that the capital stock tax laws under consideration are in violation of the Fifth Amendment of the Constitution of the United States, because (1) the capital stock on which the tax is imposed bears no relationship to the actual value of the capital stock and is therefore arbitrary, (2) whether or not it was intended to have any relationship to the actual value of the capital stock it is grossly discriminatory and lacking in classification, (3) it is so indefinite on its face as to make taxpayers guess at its meaning and act at their peril, and (4) the adjustments provided for years subsequent to the declaration year completely fail to result in a correct valuation of the capital stock for such succeeding years. Plaintiff also claims that in enacting the capital stock legislation Congress made an unauthorized delegation of its powers.

■ ■ Certain legal principles which are applicable generally to the tax in question have been settled by decisions of the Supreme Court. In Flint v. Stone Tracy Company, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312, the Supreme Court held that Congress has the power to impose an excise tax on corporation for the privilege of doing business in corporate form. This disposes of favorably to the Government the general right to levy an excise tax in the form of a capital stock tax. However, it is equally well settled that in doing so Congress can not exercise its power and levy a tax that is so arbitrary or wanting in basis for classification as would result in confiscation of property rather than taxation of property and violate the due process clause of the Fifth Amendment. Brushaber v. Union Pacific Railroad Company, 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713 (income tax provisions of the Tariff Act of 1913); Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081 (estate tax on property transferred by decedent during his lifetime); Blod-

gett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206 (retroactive gift tax); Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (conclusive presumption that gifts made within two years prior to the death of the donor were made in contemplation of death). Accordingly, the main question to present itself is whether or not the Acts in question are so arbitrary or lacking basis for classification as to amount to a taking of the taxpayer's property without due process of law.

■■■ We do not agree with plaintiff's contention that the declared value of the capital stock on which the tax is imposed bears no relationship to the actual value of the capital stock and was not intended to bear any such relationship, or that the operation of the law is grossly discriminatory between taxpayers. This contention is based upon plaintiff's construction of the act that each individual taxpayer has a right to arbitrarily declare the value of its capital stock regardless of its actual value; that the act permits the taxpayer to make the best guess possible as to the future of its business and then based on that guess to arbitrarily declare a value for its capital stock which would place its combined capital stock tax and excess profits tax at a minimum, which valuation would in many cases bear no relationship to the actual value. If that construction of the tax is correct, plaintiff's contention that the tax is unconstitutional and void has strong support. Oertel Company v. Glenn, Collector, D.C., W.D.Ky., February 10, 1936, 13 F.Supp. 651, 653, in which the District Court of this District said, in passing upon another issue raised by the Act, "if the above statute is construed as contended by the defendant, that the taxpayer can fix and declare the value of its capital stock regardless of underlying facts, it is void," and "if the act here in question is construed to raise a conclusive presumption that the tax is to be levied on the declared value of the taxpayer, regardless of the actual value, it is violative of the Fifth Amendment. Bailey v. Alabama, 219 U.S. 219, 250, 31 S.Ct. 145, 55 L.Ed. 191; McFarland v. American Sugar Refining Company, 241 U.S. 79, 86, 36 S.Ct. 498, 60 L. Ed. 899." This construction is based upon the wording of the statute to the effect that the declaration of value by the taxpayer can not be amended. It

also has support from the opinion of the Court of Claims in Allied Agents v. United States, 26 F.Supp. 98, 103, decided February 6, 1939, which, however, upheld the constitutionality of the tax. In discussing this question that Court said "it is urged that the statute raises a conclusive presumption that the declared value is the actual value. We think this is clearly erroneous. The taxpayer itself is permitted to name the value. In other words, it elects what value it will fix as the basis of the tax. Instead of presuming that the declared value is the actual value, the actual value is immaterial." We do not agree with this statement, or that the proper construction of the Act is that the actual value of the capital stock is immaterial or that the taxpayer can fix the value of its capital stock regardless of underlying facts, or the Act provides a conclusive presumption that the tax is to be levied on the declared value of the taxpayer regardless of the actual value. The same opinion in Oertel Company v. Glenn, supra, relied upon by plaintiff also says in construing the Act "the taxpayer is authorized under the provisions of the act to declare the value, but this cannot be arbitrarily done; there must be a basis in fact for its conclusion. * * * If 'value' as used in the act is given its ordinary and accepted meaning in the sense there used, it is a valid exercise of taxing power." We construe the Act to mean that the taxpayer in making its declaration of value should make a declaration consistent with the facts with reasonable latitude allowed for difference in judgment, and should be required to exercise good faith and fairness in declaring the value of its capital stock, and that the purpose of the Act is to impose a tax based on the fair and reasonable value of the stock, rather than upon an arbitrary value fixed by the taxpayer. The Act permits the taxpayer to make this valuation itself, but it nowhere permits it to declare an arbitrary value not consistent with the facts. On the contrary it imposes upon the taxpayer the duty of fixing "the value" of its capital stock. The word "value" has a definite meaning, which is radically different from selecting a figure at will. Oertel Co. v. Glenn, supra. In order to induce the taxpayer to make a fair declaration of value consistent with the facts the Acts in question coupled with the capital stock tax an excise profits tax which in the great ma-

jority of cases would exact a penalty from the taxpayer if it arbitrarily grossly undervalued or overvalued its capital stock. The effect of the two taxes operating together was the higher the declared value of the capital stock the lower would be the excess profits tax, and the lower declared value of the capital stock the higher would be the excess profits tax. The Circuit Court of Appeals for this Circuit has stated that the primary object of providing the excess profits tax "was to induce corporations to declare a fair or reasonable value upon their stock. See Senate Committee's Report No. 114 and the Conference Report No. 13185, p. 33." Glenn, Collector, v. Oertel Company, 6 Cir., 97 F.2d 495, 496. The history of the tax legislation shows that the purpose of Congress in permitting the taxpayer to fix the value was to avoid the great difficulties which had arisen under the original excess profits tax imposed at the time of the World War and repealed in 1921 in determining the amount of invested capital which was made the basis of that tax. It is not consistent with this background, with the wording of the statute, and with the coupling together of the capital stock tax and the excess profits tax to accept plaintiff's contention that the Act should be construed as permitting the taxpayer to arbitrarily declare any value it pleased in its original declaration of value.

██ We realize that the statute provides that the value declared by the taxpayer can not be amended. This means that the original declaration can not be subsequently changed either by the corporation or by the Commissioner. It is conclusive upon the parties, if the taxpayer has acted in good faith in declaring its "value" as directed by the statute. However, it does not follow that the original declaration of value by the taxpayer is conclusive and can not be attacked if the taxpayer has acted arbitrarily or fraudulently in declaring the value of its capital stock. Although the rule is well settled that in the absence of a statutory method of review, as in the present case, the findings of the official assessing body, after a hearing and upon notice to the taxpayer, are final and are not to be set aside or disregarded by the courts, yet if it is made to appear that the assessing body proceeded upon an erroneous principle or if the assessment was arrived at through fraud the court has the authority to set it aside. Louisville & Nashville R. Company v. Greene, 244 U.S. 522, at page 536, 37 S.Ct. 683, 61 L.Ed. 1291, Ann.Cas.1917E, 97; Chicago, Burlington & Quincy R. Co. v. Babcock, 204 U.S. 585, at page 596, 27 S.Ct. 326, 51 L.Ed. 636. A striking example of the power of the court to so do is seen in the case of Northern Pacific R. Co. v. Adams County, D.C., 1 F.Supp. 163. In Walsh v. King, 74 Mich. 350, 41 N.W. 1080, 1082, the Court held that a taxpayer was entitled to relief in equity where the assessing officers by agreement with the owners of a certain class of property arbitrarily assessed the same at less than its fair cash value. The Court said "fraud is ever open to remedy in a court of equity, and there can exist no good reason why relief against fraud in taxation, which in the end deprives a man of his property without due process of law, cannot be granted as well as against any other fraud." See, also, L. W. Blinn Lumber Co. v. Los Angeles County, 216 Cal. 474, 14 P.2d 512, 84 A.L.R. 1304; West Virginia Hotel Corporation v. W. C. Foster Co., 101 Fla. 1147, 132 So. 482; Inland Empire Land Co. v. Douglas County, 149 Wash. 253, 270 P. 812.

██ It is our construction of the taxing Acts in question that it was the intention of Congress to impose a tax based on the fair and reasonable value of the capital stock, with the right to revise this declaration of value waived by the Government in the absence of fraud or bad faith on the part of the taxpayer. Since such a construction does not permit an arbitrary valuation selected at will by each particular taxpayer, it follows that plaintiff's first two contentions are not well taken.

██ This construction of the Acts also disposes of plaintiff's contention that the Acts furnish no guide or method for the taxpayer to follow and is so indefinite on its face as to make taxpayers act at their peril. The Acts require the taxpayer to determine the value of its capital stock. The taxpayer knows the value of its capital stock probably better than any other person. In any event it is in possession of all the necessary information by which the real value can be ascertained. In such a case there is no necessity for establishing a guide or method which would enable the taxpayer to make a declaration of value.

We do not believe that the adjustments provided for years subsequent to the declaration year fall so short of reaching a correct valuation for such succeeding years as to invalidate the tax for the succeeding years. We recognize that the adjustments provided may not be perfect and do not cover every possible situation which may arise in subsequent years affecting the value of the capital stock. But in our opinion they are reasonably inclusive and will result in a valuation for subsequent years that is not arbitrary or unreasonable. As was stated by the Supreme Court in Flint v. Stone Tracy Co., supra [220 U.S. 107, 31 S.Ct. 355, 55 L.Ed. 389, Ann.Cas.1912B, 1312], "conceding the power of Congress to tax the business activities of private corporations, including, as in this case, the privilege of carrying on business in a corporate capacity, the tax must be measured by some standard, and none can be chosen which will operate with absolute justice and equality upon all corporations."

Plaintiff's last contention is that in enacting the capital stock tax Congress made an unauthorized delegation of its powers. We recognize the well established rule as recently restated by the Supreme Court in the cases of Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, that Congress can not delegate its legislative powers. We see no delegation of such powers in the Acts in question. The taxpayer does not have the right to determine how much or how little tax it will pay. The measure of the tax is definitely fixed by the statute. The taxpayer does have the duty of declaring the value of its capital stock on which the tax will be imposed, but this duty is similar to the duty imposed upon taxpayers in other taxing statutes where the taxpayer is required to furnish the facts which determine the amount of tax which it will pay. This duty of furnishing the factual basis for the ultimate tax is not a delegation by Congress of its taxing powers.

The Acts in question have been attacked as unconstitutional in numerous federal courts. Our attention has not been called to any decision holding the tax unconstitutional. In each of the following reported cases the Court has held the tax in question to be constitutional: Chicago Tele-phone Supply Co. v. United States, Ct.Cl., 23 F.Supp. 471; Allied Agents, Inc., v. United States, Ct.Cl., 26 F.Supp. 98; Rosoff Tunnel Corp. v. Higgins, D.C., S.D. N.Y., 28 F.Supp. 880; Midvale Paper Board Co., Inc., v. United States, D.C., S.D.N.Y., 31 F.Supp. 851; Mountain Iron Co. v. United States, D.C., E.D.Minn., March 9, 1940, 31 F.Supp. 895; Stromberg-Carlson Mfg. Co. v. McGowan, Collector, D.C., W.D.N.Y., March 5, 1940, 32 F.Supp. 101. The various contentions advanced by the plaintiff in this action are also discussed and rejected by the opinions above referred to.

Motion of the defendant to dismiss the complaint is sustained.