[Civ. No. 14256.   Second Dist., Div. One.   Aug. 13, 1945.]

EASTERN-COLUMBIA, INC. (a Corporation), Respondent, v. COUNTY OF LOS ANGELES et al., Appellants.

J. H. O'Connor, County Counsel, Harold W. Kennedy, County Counsel, Gordon Boller, Deputy County Counsel, Ray L. Chesebro, City Attorney, and Louis A. Babior, Deputy City Attorney, for Appellants.

Holbrook & Tarr; Leslie R. Tarr and Freda B. Walbrecht for Respondent.

YORK, P. J.—This is an appeal by the defendants, county of Los Angeles and city of Los Angeles, from a judgment in favor of plaintiff corporation which grants a refund of taxes paid by it under protest on personal property for the fiscal year 1940-41.

The corporate respondent is engaged in the merchandising of furniture, household goods and wearing apparel, maintaining stocks of such merchandise distributed between its principal place of business in the city of Los Angeles and eleven

branch stores situate in the cities of Los Angeles, Huntington Park, Pasadena and Long Beach, as well as in unincorporated county territory. Respondent took exception to the county assessor's method of valuation and to the assessed value he placed on its stock of merchandise for tax purposes for the fiscal year 1940-41, claiming that the assessor in valuing said personal property on the basis of respondent's inventory did not assess at the usual 40 per cent thereof, but instead used the factor of 50 per cent. Accordingly, respondent filed an application for reduction of such assessment from $416,865 to $333,480 with the Board of Supervisors of Los Angeles County sitting as a county board of equalization. After a hearing, the board denied the application; taxes were extended against the assessed property and were paid by respondent under protest. Thereafter claims for a refund of that portion of the taxes computed on the asserted overvaluation having been rejected, the respondent instituted the instant action "For refund of taxes paid under protest and for refund of taxes illegally collected," on the ground that said taxes were void, excessive, fraudulent and unconstitutional.

The complaint alleged that it was the uniform practice of the assessor to determine the full cash value of stocks of merchandise owned by merchants operating in the county "by taking the book inventory thereof, if maintained in accordance with the landed cost or market . . . and by applying to such inventory for assessment purposes the factor of 40 per cent thereof, arriving, for assessment purposes, at a full cash value of the equivalent of 40 per cent of such book inventory value"; that this method was used by the assessor in computing assessments of competing merchants, but that in the case of respondent, the assessor arbitrarily applied the factor of 50 per cent of the book inventory in order to determine the full cash value of respondent's merchandise for assessment purposes, and in so using such special method of assessment and in arriving at an assessed valuation of respondent's merchandise, the assessor did so intentionally in order "to discriminate against and to defraud plaintiff, and to cause plaintiff to pay an undue and disproportionate amount of the tax burden properly imposed upon plaintiff for governmental purposes for said tax year of 1940-41; that said assessments . . . actually placed on plaintiff's merchandise were excessive, discriminatory and void . . . in violation of plaintiff's rights to due

process of law." It was also alleged that upon hearing of respondent's application for reduction of such assessed valuations, the board of equalization, disregarding the evidence presented to it, denied the application thereby adopting the "illegal, erroneous, fraudulent and special method employed by said Assessor . . . and in intentionally adopting, ratifying and approving the illegal, erroneous, fraudulent and special method of assessing plaintiff's merchandise different from that employed . . . in assessing other merchants' merchandise in the County of Los Angeles for said tax year 1940-41, said Board did intentionally discriminate against plaintiff."

At the trial, which consumed fifty-two days, respondent introduced the transcript of all the evidence presented to the Board of Equalization at the hearing on its application for reduction of the assessment. In addition thereto, respondent was permitted to introduce the testimony of twenty-two witnesses, none of whom had testified at the hearing before the board, as well as fifty exhibits which had not been offered at said hearing. Appellants objected that receipt of such testimony and such evidence would constitute a trial de novo of the question of the equalized assessment of the assessed property and a collateral attack upon the quasi judicial determination of the board that the assessment of such property was equalized and not disproportionate to the assessment of other property, and that such testimony and evidence would not prove or tend to prove fraud or fraudulent conduct, either actual or constructive, on the part of said board in making its determination and denying said application.

The judgment is for a sum which represents the difference between the amount of taxes paid based on the assessment calculated at 50 per cent, and the amount based on an assessment calculated at 40 per cent of the inventory figure.

The cause is presented to this court upon a transcript on appeal which contains the usual clerk's transcript, and an engrossed bill of exceptions containing all of the evidence produced at the hearing before the Board of Equalization, appellants' specifications of error, together with the following stipulation:

"It is stipulated by and between the plaintiff and the defendants County of Los Angeles and City of Los Angeles, through their attorneys, as follows:

"That Appellants have not included in their Bill of Excep-

tions any of the evidence of value or methods of assessment presented for the first time to the Superior Court and not presented to the Board of Equalization for the reason that Appellants are basing their appeal upon the proposition that granting a trial de novo was error.

"It is stipulated and agreed that if granting a trial de novo was not error then the findings and judgment of the above entitled Court relative to the fair, equalized assessed value of the property are supported by substantial although conflicting evidence. Dated: November 4th, 1942 . . . Filed Dec. 18, 1942."

The position of appellants, as declared in their opening brief, is that "under established rule of law the assessor's valuation of property for tax purposes which, upon the property owner's application to the County Board of Equalization for reduction, has been confirmed and approved, is conclusive on the question of value and is not thereafter subject to question or attack upon claim or suit for tax refund, and that the Board's determination of equalization of assessment is not subject to collateral attack. The conduct of the trial court herein, we respectfully submit, was clear violation of such established rule." Appellants urge that the duty of the trial court "is to review the proceedings before the County Board of Equalization and to ascertain and determine whether that body, *upon the evidence which was before it,* so grossly abused its judicial discretion that its conclusion regarding the matter was tantamount to no conclusion at all but constituted a constructive fraud upon the litigant." (Italics included.)

In the case of *Universal Consolidated Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746], the Supreme Court in a decision filed December 5, 1944, held that a taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property; reversed a judgment of the trial court in favor of plaintiffs and remanded the cause to the board of equalization "for further consideration and action in accordance with due process of law."

In the cited case, plaintiffs charged that the particular method of assessment used in relation to their oil leases "produced valuations which were unfair, unjust and excessive, as compared with other property holdings of substantially the same character and value and similarly situated in the county, and so imposed an unequal burden upon the complainants,"

resulting in an invasion of their constitutional rights to due process and equal protection of the laws. At the trial before the superior court, plaintiffs introduced in evidence their applications to the board of equalization for reduced valuations, the reporter's transcript of the testimony at the hearing before such board and certain exhibits there presented. In addition, further evidence was introduced, over the objection of the defendant, as to the assessor's method of assessment of the leases in question and as to the relative value of the plaintiffs' and adjacent leasehold interests. After a full hearing, the trial court found in favor of plaintiffs on all material issues in dispute and made considerable reductions in the challenged valuations.

In announcing its decision upon appeal from the trial court's judgment, the Supreme Court stated at page 356, that "The principal point in controversy between the parties concerns the propriety of the plaintiffs' recourse to the court for relief from the adverse determination of the county board of equalization. It must be conceded, of course, that it is well settled in this state that to the authorized county board of equalization has been confided the duty of determining 'the value of the property under consideration for assessment purposes upon such basis as is used in regard to other property, so as to make all the assessments as equal and fair as is practicable'; that in discharging this duty, 'the board is exercising judicial functions, and its decision as to the value of the property and the fairness of the assessment so far as amount is concerned constitutes an independent and conclusive judgment of the tribunal created by law for the determination of that question', adjudicating necessarily that 'the property is assessed at the same value proportionately as all the other property in the county'; that such adjudication 'cannot be avoided unless the board has proceeded arbitrarily and in willful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain of the taxpayers . . . or unless there be something equivalent to fraud in the action of the board'; and that 'Mere errors in honest judgment as to the value of the property will not obviate the binding effect of the conclusion of the board.' (*Los Angeles etc. Co.* v. *County of Los Angeles*, 162 Cal. 164, 169-170 [121 P. 384, 9 A.L.R. 1277]; see, also, *Southern Pac. Land Co.* v. *San Diego County*, 183 Cal. 543,

546 [191 P. 931]; *Birch* v. *County of Orange,* 186 Cal. 736, 741 [200 P. 647]; *Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339, 342 [212 P. 711]; *Merchants Trust Co.* v. *Hopkins,* 103 Cal.App. 473, 477-478 [284 P. 1072]; *Montgomery Ward & Co.* v. *Welch,* 17 Cal.App.2d 127, 132 [61 P.2d 790]; *Southern Cal. Tel. Co.* v. *Los Angeles County,* 45 Cal.App.2d 111, 116-117 [113 P.2d 773].) While not classifiable with any aspect of fraud or bad faith, the lack of due process distinguishing the procedural phase of these equalization matters as submitted to the board furnishes an equally appropriate basis for the court's intervention in protection of the plaintiffs' constitutional rights.'' In reviewing the record before the board, it was revealed that certain members of the board expressed their understanding that they were passing upon applications which presented a point of law rather than matters of equalization, the court concluding that such conduct of the board resulted in a denial of procedural due process, i. e. (page 362) : ''The decision of the board was simply that it had nothing to decide, and it accordingly failed to function as an equalization tribunal. . . . *But the mistake of the board in the respect noted does not sanction the court's undertaking to resolve the conflicting issues of fact bearing upon the taxable value of the plaintiffs' leasehold interests.* As appears from the numerous authorities cited in the forepart of this opinion, the respective county board of equalization is the fact-finding body designated by law to remedy excessive assessments (Cal. Const., art. XIII, § 9), and when that tribunal, after due hearing and within the limits of reasonable discretion, makes its *findings on the facts,* such decision is final and conclusive. . . . While considerations of procedural due process here nullify the force of the authorized tribunal's ruling and sustain its avoidance by the court in response to the plaintiffs' applications for relief therefrom, the intent of the law governing equalization proceedings would require that these cases be remanded to the board for completion upon the basis of the evidence submitted at the hearing before it.''

In support of the contentions advanced by them in the instant appeal, appellants cite the decision of this court in *Eastern-Columbia, Inc.* v. *County of Los Angeles,* 61 Cal.App. 2d 734 [143 P.2d 992]. That action was very similar to the one now under consideration : a refund being sought on 1940-41 taxes levied on parcels of improved real property, based on

the claim that "notwithstanding good and substantial evidence presented . . . to the board of equalization, that board, in disregard of the evidence adduced, did arbitrarily and wilfully deny the application for redress and did accordingly intentionally impose upon plaintiff such an unfair and unequal burden of taxation as to amount to constructive fraud."

It was there held at page 743: "Where, as in the instant case, the taxpayer feels he has just cause for complaint, the law has set up a tribunal composed of the board of supervisors, sitting as a board of equalization, to determine the facts. When such board, after due hearing, and within the limits of reasonable discretion, has made its findings on the facts such decision is final and conclusive. Before the decision of the board, constituting as it does an independent and conclusive judgment, abrogating and taking the place of the judgment of the assessor, will be set aside by the courts on review, even though there be error or mistake, there must be proof of actual fraud, or such arbitrary, unreasonable or grossly oppressive action, which wilfully transgresses or disregards law, and amounts to constructive fraud (*Hammond Lumber Co.* v. *County of Los Angeles, supra,* [104 Cal.App. 235 (285 P. 896)] at page 241). Where, as here, the assessment is not wholly void, an action such as the present one, though partaking of an action to recover a tax paid under protest is in fact, and properly so, a proceeding to review the decision of the board of equalization. In such a proceeding the function of the trial court therefore, was to determine whether a correct method of valuing the land and improvements was followed, and then, to ascertain whether there was substantial evidence before the Equalization Board to justify the assessment as made (*Hammond Lumber Co.* v. *County of Los Angeles, supra,* at pages 241 and 242). . . . As we have pointed out, a proceeding such as the instant one savors of certiorari or review. *The sole issue before the court was, therefore, whether the decision of the board of equalization was based on fraud or the equivalent of fraud. And that determination must be based upon the evidence at the trial of the proceeding had before the board.*" (Emphasis added.)

█ Following the reasoning and the rules of law enunciated by the cases hereinbefore discussed, it was error for the court below to try de novo the question of the alleged overvaluation of respondent's personal property. The sole issue

before the trial court was whether the decision of the board of equalization was constructively fraudulent, and in its determination of that issue, the court was limited to a consideration of the record of the proceedings had before such board.

"A fraudulent overvaluation of property by an assessor will not be set aside where it appears that the board of equalization has brought its honest judgment to bear on the matter, and determined the true value of the property. Such action by the board is conclusive on the question of fairness of valuation and hence on the question of injury to the taxpayer by the attempted fraud of the assessor." (9 A.L.R. 1284. See, also, *Los Angeles Gas & Electric Co.* v. *County of Los Angeles,* 162 Cal. 164 [121 P. 384].)

On this question of conclusiveness of determination of the board of equalization in the face of an allegation of fraud, it is stated in 21 California Law Review 285: "The general rule, to which California adheres, precludes the review of assessments by the courts if the method pursued is that prescribed by law. An exception to the rule is recognized where the action of the board is fraudulent or constitutes 'something equivalent to fraud'. While an arbitrary and excessive assessment is not, of itself, invalid, the California cases seemingly establish the proposition that the 'equivalent of fraud' will be found where the taxpayer affirmatively proves to the board of equalization, but without obtaining proper relief, that there is a substantial discrimination and inequality between the assessment assailed and assessments on like property similarly situated. When a substantial discrimination is proven, relief is given regardless of the motives actuating the members of the board. It is immaterial whether the unequal burden results from a gross abuse of discretion, gross error or negligence. An assessment twice in amount of that placed on like property similarly situated has been held to be a substantial discrimination." (Citing numerous authorities.) (See, also, 24 Cal.Jur. §§ 228 and 230, pp. 243, 246.)

In an annotated article entitled "Judicial Review of Determinations by County Boards of Equalization," under the authorship of W. Sumner Holbrook, Jr., Esq., appearing in 14 Southern California Law Review 276 at 286, it is asserted: "Proper methods of assessment are matters of law, not of fact. (*San Diego & Arizona Ry.* v. *Board of Equalization,* 165 Cal. 560, 564 [132 P. 1044].)  Correctness of the Assessor's meth-

ods is always reviewable in a court of law, provided, of course, that the taxpayer has demonstrated that, by reason of the method employed, discrimination in assessment as to his property has occurred. ([*L. W.*] *Blinn Lumber Co.* v. *County of Los Angeles*, 216 Cal. 474, 483 [14 P.2d 512], 84 A.L.R. 1304, 1309.) On the other hand, there is nothing for the court to review, even if the Assessor's method be shown to be wrong, if no discrimination resulting therefrom was shown to the Board. (*Wild Goose Country Club* v. *County of Butte*, 60 Cal.App. 339, 343 [212 P. 711].)''

██ An examination of the record of the proceedings before the board of equalization in the instant case, discloses that the board exercised its fair and impartial judgment upon the evidence presented to it and that such evidence failed to show that any discrimination resulted to respondent.

Respondent's application before the board alleged an over-assessment of its property. Upon the hearing respondent alleged that the assessment was calculated at 50 per cent instead of at 40 per cent of the property value as shown by the company's inventory. The testimony of respondent's tax agent, Mr. Minteer, and its comptroller, Mr. Harper, as to its position in this regard is as follows:

''Mr. Minteer: On this particular merchandise, we are asking that it be reduced from a 50 per cent assessment to I think a 40 per cent assessment and Mr. Harper an official of the company is here representing them. Is that 40 per cent of the actual cost?

''Mr. Harper: Book value. It is taken from our books and records. They have assessed our merchandise at 50 per cent and we find many instances where they have made assessments of merchandise at 40 per cent, and we have the figures here to substantiate it.

''Mr. West (Deputy Assessor): We have gone through their books and we have a complete record of them. It is not the Assessor's contention that this is a 50 per cent assessment. Here is a large inventory prepared partly at cost and partly under the retail method and we find that there is a net valuation of inventory of $5,234,572.00 which was increased 22 per cent average mark-down, and allowing 22 per cent for absolescence, we made a 50 per cent assessment after allowing for the absolescence.

''Mr. West: When we assess the ordinary corporation we

find they carry their merchandise on the books at cost and they only inventory at the end of the fiscal or current year. We go in there and make an allowance of 20 per cent for obsolescence in such current stock and assess the balance at half, that is equal to 40 per cent, but if we find a firm has already taken obsolescence out of the inventory and has got it down to market value as of the first Monday in March, we take and assess that inventory at half. That is the contention the assessor is making here. This firm not only had obsolescence written out but has underpriced it.

"Mr. Ford (Member of the Board): Do I understand that these people in making their inventory deducted this obsolescence first before they gave you the figures whereas all of the other firms do not?

"Mr. West: That is the contention. . . .

"Mr. Krutel (Deputy Assessor): I asked Mr. Harper if he hadn't allocated all items of obsolescence before taking the inventory and he said he had.

"Mr. Minteer: I don't remember that statement.

"Chairman McDonough: Was that question asked you, Mr. Harper?

"Mr. Harper: That question was asked me and I said certain depreciation had been taken care of. That is true of everybody. . . .

"Mr. Ford: Let me ask Mr. West, as I understand Mr. Harper his contention is that the practice of many concerns comparable to this concern is actually to take allowance for this obsolescence before the figures reach you, and then the inference is that you do take the figures in which obsolescence has been allowed from the total actual value and deduct 20 per cent for further obsolescence?

"Mr. West: Not where an allowance has already been taken.

"Mr. Ford: What figure do you start with?

"Mr. West: We start with the inventory figure as computed on their books carried under the accepted principles of accounting.

"Mr. Ford: Showing no obsolescence.

"Mr. West: They will show obsolescence in the last final inventory but not such unusual obsolescence as is shown in these books.

"Mr. Ford: They do it more extremely.

"Mr. West: That seems to be the whole thing. The great

percentage they deduct in computing their inventory is exorbitant as compared with other stores.

Mr. Smith (Member of the Board): When you take a firm doing business on a cost basis you take the cost and deduct 20 per cent for obsolescence?

"Mr. West: That is right.

"Mr. Smith: And then you take half of that figure?

"Mr. West: Take half of that figure. . . .

"Mr. West: For this particular firm this year, as I understand it, instead of taking a write-down of 40 per cent or whatever the normal percentage was, they reduced some of the articles 63 per cent and they attained what we would give them in the matter, that additional 20 per cent obsolescence and now they want another 20 per cent on top of that. Have I stated that fairly?

"Mr. Buehner (Deputy Assessor): Yes. . . .

"Mr. Smith: They have taken the 20 per cent as they went along item by item. That is what you mean. They marked it down so as to take the normal reduction of 20 per cent that you would give them on the cost inventory?

"Mr. West: They mark it down greater than the average mark down so that the average write off would show that additional 20 per cent.

"Mr. Smith: Yes, but instead of taking an inventory with normal mark down and then 20 per cent off to arrive at an assessment figure, they have taken it item by item and have reached the same answer by taking it off on each item as they went along? . . .

"Mr. Boller (Deputy County Counsel): And now they come to the Assessor and ask him to give them 20 per cent."

While it is true, as stated in *Los Angeles Gas & Electric Co.* v. *County of Los Angeles,* 162 Cal. 164 [121 P. 384]: "A taxpayer may so assail an assessment in the courts where it was 'fraudulently and corruptly made with the intention of discriminating against him for the purpose of causing him to pay more than his share of the public taxes,' "—no evidence of discrimination or disproportionate assessment was produced before the board in the instant cause. Respondent's witnesses testified that the assessment of other firms was upon a 40 per cent valuation and that respondent's assessment was upon a 50 per cent valuation, but they offered no evidence to support that stand. Appellants' witnesses testified that respondent had received its

20 per cent obsolescence depreciation *before assessment* by taking such deduction itself in the valuation on its own books; other merchants received their 20 per cent obsolescence depreciation *in the process of assessment* by the assessor's deduction thereof from their book figure, which had not theretofore been so reduced. In other words, the evidence before the board was amply sufficient to sustain a finding that respondent's property was assessed at 40 per cent of its value, instead of at 50 per cent, as claimed.

In the light of the conclusion reached after a consideration of the evidence produced at the hearing before the board of equalization, it would appear that the denial by such board of respondent's application was justified, and that no corrupt or fraudulent motive could be attributed to the board for such action.

For the reasons stated, the judgment is reversed.

Doran, J., and White, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 11, 1945. Schauer, J., voted for a hearing.