[Civ. Nos. 18037, 18038.   Second Dist., Div. Two.   Nov. 5, 1951.]

SAKS & COMPANY (a Corporation), Respondent, v. CITY OF BEVERLY HILLS, Appellant.

Richard C. Waltz, City Attorney, Richard L. Sieg, Jr., Assistant City Attorney, Bodkin, Breslin & Luddy, Peter E. Giannini and S. V. O. Prichard for Appellant.

Wright, Wright, Green & Wright, S. Earl Wright, O'Melveny & Myers, Rodney K. Potter and Jackson W. Chance for Respondent.

McCOMB, J.—This is an appeal by defendant (City of Beverly Hills) from two judgments in favor of plaintiff. The first action filed contains two counts, one for an injunction and one for declaratory relief.

The first count seeks to restrain the enforcement of the revocation of certain temporary variances in zoning ordinances, and the second count seeks a declaration respecting plaintiff's rights thereto. The second action, in certiorari and mandamus, is to review certain revocation orders of the zoning variances theretofore granted to plaintiff which had been adopted by defendants. The cases were consolidated for trial before the court without a jury. Separate judgments were entered and separate appeals taken which, since both actions involve the same issues, have been consolidated on appeal and will be disposed of together.

*Facts:* In 1936 defendant city had in effect Zoning Ordinance No. 443 which established the land use permissible for each parcel of land within the city. The greater portion of the city was zoned for single-family residential use. Commercial use was confined largely to the area enclosed by Santa Monica Boulevard on the northwest, the alley south of Wilshire Boulevard on the south, and Canon Drive on the northeast, and to so-called strip development along the major boulevards traversing the city. Apartment and multiple-dwelling use was in general confined to the area adjoining such commercial districts.

In 1939 the basic zoning ordinance was modified by the enactment of an ordinance changing the restrictions governing Zone R-4 to provide expressly that such properties might be used for parking in connection with adjacent commercial C-3 property when a variance had been granted in respect thereto.

In the fall of 1937 plaintiff entered into a lease with the owner of Lots 69, 72 and 73, located on the southwest corner of Wilshire Boulevard and Peck Drive. This lease required a three-story building to be constructed for plaintiff on the lot fronting on Wilshire Boulevard, with the two adjoining

lots to be used for parking cars of customers of the new store. The lessor applied to the City Council for a zone variance to park cars of customers of the store about to be built. On May 10, 1938, defendant City Council, after notice and public hearings, adopted a resolution relative to Lots 72 and 73 reading as follows:

"It is for the best interests of the City of Beverly Hills, and the property owners and inhabitants thereof, and in furtherance of the public peace, health, safety, and general welfare, to grant a temporary variance from the zoning ordinance of said city as the same affects said lots for the purpose of permitting the parking of automobiles thereon."

Said resolution, after setting forth the conditions upon which the variance was granted, provided that nothing contained in the variance "shall prevent the City Council, in its discretion, from revoking or modifying this resolution, or the variance herein provided for after regular public hearings in regard thereto." Subsequently plaintiff went into possession of its new store under the lease and expended large sums of money in improvements upon the property. Thereafter plaintiff paved four lots, 65 to 68, on the east side of Peck Drive and used them for parking cars, these lots having been granted a zone variance by the resolution above set forth, which variance was continued in effect by subsequent Resolution No. 1162. Numerous other, similar zone variances were granted to other applicants in the same area.

In 1947 a group of citizens asked the city council to call a special election for the purpose of enabling the voters of the city to vote on the matter of prohibiting future zoning variances and enforcing the existing zoning regulations. Plaintiff objected to the submission of this question to the electorate and gave notice that it would contest the legality of any such action so taken.

Subsequently Ordinance No. 698 was submitted to the electorate at a special election and adopted which provided for the revocation of all the variances theretofore granted and amended the zoning ordinance so as to prohibit the granting of any such variances in the future. At the time of the adoption of this ordinance plaintiff was using 9½ lots in Zone R-4 for parking the cars of its customers.

Plaintiff immediately filed the first action mentioned above to enjoin the enforcement of Ordinance 698 on the ground that it was not properly adopted, was arbitrary, unreasonable, and deprived plaintiff of its property without due process of

law. After the first case was at issue and enforcement of the ordinance had been temporarily enjoined a group of citizens sought to have the city council take steps to remove the contention that Ordinance 698 had not been properly enacted by revoking the variances granted to plaintiff.

When the city council declined to take such action this group, in the election campaign in the spring of 1948, opposed the reelection of the councilmen who were running for reelection and proposed their own candidates, and during the campaign the major issue against the incumbent councilmen running for election was that they had failed to take action to revoke the zoning variances. This group was known as the "United Home Owners." Three of the persons active in it, Councilmen Gerth, Olson and Cotterell, were elected to the city council. Two of these candidates, prior to the election, publicly stated that if they were elected they would proceed to take necessary steps to have all parking variances revoked. Upon their election these councilmen filled two vacancies by selecting Councilmen McConnell and Fisher.

In July, 1949, the city council adopted Ordinance 720, which is essentially identical with the provisions of Ordinance 698, and Resolution 1350, which purported to revoke the variances in zoning ordinances previously granted permitting parking on lots as above described. After an extended trial the court held that plaintiff was entitled to the relief it sought in both proceedings and gave judgment accordingly.

■ *Questions:* First: *Did the trial court err in granting plaintiff a trial de novo?*

*No.* ■ Where there is pleading and proof that a local board has acted arbitrarily, capriciously, or fraudulently the superior court will, upon either mandamus or certiorari, afford petitioner a trial de novo. (*Dierssen* v. *Civil Service Com.,* 43 Cal.App.2d 53, 59 [110 P.2d 513]; *Vaughn* v. *Board of Police Comm'rs,* 59 Cal.App.2d 771, 781 [140 P.2d 130]; *cf. Bank of America* v. *Mundo,* 37 Cal.2d 1, 5 [229 P.2d 345].)

In the present case the trial court found supported by substantial evidence that (a) three of the councilmen were biased and prejudiced and had determined in advance of hearings and presentation of evidence to vote for a resolution revoking the zoning ordinance variances in favor of plaintiff, and (b) one councilman who voted in favor of the adoption of Ordinance 720 and Resolution 1350 had not heard the evidence presented to the council at two of the hearings nor

had he seen or read transcripts of the oral proceedings taken at such hearings.

The city council consisted of five members and it was necessary for the adoption of an ordinance or resolution that a majority of the quorum, consisting of three in this case, vote in favor of the resolution. (2 Deering's Gen. Laws, Act 5233, § 859.) Since one of the members was disqualified because he had not heard the evidence; two of the members were disqualified because of bias and prejudice and having prejudged the case; and one of the two remaining members voted against the ordinance and resolution, it is evident that Ordinance 720 and Resolution 1350 were passed arbitrarily and capriciously without affording plaintiff a fair and impartial judgment upon the evidence presented to the council.

Therefore the rule set forth in *Eastern-Columbia, Inc.* v. *County of Los Angeles,* 70 Cal.App.2d 497 [161 P.2d 407], and *Bank of America* v. *Mundo, supra,* that where an examination of the proceedings before a local board discloses the board exercised its judgment fairly and impartially and in the absence of fraud, malice or arbitrary conduct the superior court upon review will confine itself to an examination of whether the evidence presented to the local body was substantial in support of its findings, is not here applicable and the trial judge properly granted a trial de novo.

The various ordinances granting plaintiff a zoning variance provide that nothing contained in the variance "shall prevent the City Council, in its discretion, from revoking or modifying this resolution, or the variance herein provided for, after regular public hearings in regard thereto." It is to be noted that there was a requirement that there be a regular public hearing before the variances could be revoked. ▮ A public hearing contemplates a fair and impartial hearing at which competent evidence may be presented before a fair and impartial tribunal. (*Albert Albek, Inc.* v. *Brock,* 75 Cal.App.2d 173, 176 [2] [170 P.2d 508]; *Grant* v. *Michaels,* 94 Mont. 452 [23 P.2d 266, 270]; *Heath* v. *Mayor and City Council of Baltimore,* 187 Md. 296 [49 A.2d 799, 803 et seq.]; *Inland Steel* v. *N.L.R.B.,* 109 F.2d 9, 20.)

▮ It is obvious under the trial court's finding of the disqualifications of the three city councilmen that plaintiff did not have a public hearing as provided in the ordinance permitting the zone variances. Therefore, on this ground also the trial court properly held Ordinance 720 and Resolution 1350 invalid.

*Second: Was there substantial evidence to sustain the trial court's findings?*

*Yes.* ■ It is unnecessary to cite authority in support of the proposition that where a trial court grants a hearing de novo and its findings are questioned on appeal, the appellate court's duty begins and ends with a determination that there is substantial evidence to sustain the findings of fact of the trial court.

■■ In the present case there is an abundance of evidence to support the findings of fact questioned by defendant city. The trial court found that as a result of the business development along Wilshire Boulevard it is indispensable to the public welfare to provide and maintain off-street parking, to take care of cars of customers who patronize business establishments in the city; that it was impossible to provide parking spaces for these automobiles in the established commercial-zoned areas since all the lots not already built upon are presently in use for such parking; that the existence of this shortage required the use of over 1,200 curb-parking spaces in the residential zones, and the result of prohibiting parking upon the lots to which variances had heretofore been granted would be proportionately to increase such use of curb-parking space in the residential area; that there is no noise, dust or fumes arising from the use of the parking lots which are offensive to persons of ordinary sensitivity and the use of said lots would not in any respect depreciate the value of surrounding residential property; that during the Christmas shopping season and on sale days considerable traffic congestion occurs in the vicinity of the parking lots in question, but the effect of prohibiting the use of such lots would be to increase rather than decrease such congestion, and the prohibiting of parking upon plaintiff's parking lots does not, did not and cannot in any respect promote the public peace, health, safety or general welfare.

These findings were supported by evidence of three city planning experts and evidence of other witnesses including the findings of the city council of defendant city over a period of many years that the parking lots in question, by relieving traffic congestion and taking cars off the streets, were beneficial to the public welfare. In addition, the trial judge inspected the area in question. This "view" of the area was independent evidence which could be considered by the trier of facts in arriving at his conclusion and is substantial evidence in support of his findings consonant therewith. (*Sindell*

v. *Smutz,* 100 Cal.App.2d 10, 15 [1] [222 P.2d 903] ; *Rowland* v. *City of Pomona,* 82 Cal.App.2d 622, 624 [1] [186 P.2d 447].)

█ Third: *Was Ordinance 698 invalid and ineffective to terminate plaintiff's rights?*

*Yes.* In 1947 the city council called a special election for the purpose of enabling the voters of defendant city to vote on the matter of prohibiting future zoning variances and enforcing existing zoning regulations. Two opposing factions had urged the council to submit two contrary proposals. The zoning committee of defendant council recommended that public hearings be held to determine the final wording of those proposals and that they then be submitted to the electorate. This was done and Ordinance 698 was adopted. However, no hearings were held pursuant to the requirements of the Zoning Law of 1917 (Stats. 1917, p. 1419) that notice be given and hearings held as to the possible effect of the proposed zoning law upon property rights.

In the absence of compliance with such provisions of the Zoning Act of 1917, an ordinance adopted by the electors of Beverly Hills, a city of the sixth class, is void. (*Hurst* v. *City of Burlingame,* 207 Cal. 134, 138 et seq. [3] [277 P. 308].)

Defendant's contention that *Hurst* v. *City of Burlingame, supra,* is not controlling for the reason that the court did not consider the effect of article IV, section 1 of the California State Constitution is devoid of merit because an examination of the briefs in such case discloses that prior to the decision article IV, section 1 of the Constitution was called specifically to the attention of the Supreme Court and an argument similar to the one now presented to this court by defendant was urged. This decision is binding upon us.

*Dwyer* v. *City of Council of City of Berkeley,* 200 Cal. 505 [253 P. 932], also relied upon by defendant, is clearly not in point, for the Supreme Court in the Hurst case (p. 142) says of the Dwyer case: "It also appeared that the city council had taken all of the requisite preliminary steps in order that the measure might become a valid city ordinance and had actually adopted the same."

█ Fourth: *Is plaintiff estopped to attack the validity of Ordinance No. 698?*

*No.* The trial court found, supported by substantial evidence, that none of the acts set forth in defendant city's affirmative defense of estoppel were performed by the city in reliance upon any conduct or representation of plaintiff. The

court likewise found plaintiff had advised the city of its position that the parking variances could not be revoked by means of the proposed initiative election and plaintiff would contest the procedure through appropriate litigation. In the light of this finding which was supported by evidence no estoppel arose.

In view of our conclusions no useful purpose would be served by discussing other propositions urged by counsel for defendant city since, should we agree with them, it would not result in a reversal of either judgment.

The judgments are and each is affirmed.

Moore, P. J., concurred.

A petition for a rehearing was denied November 21, 1951, and appellant's petition for a hearing by the Supreme Court was denied January 3, 1952. Traynor, J., and Spence, J., voted for a hearing.