[Civ. Nos. 24425, 24426. Second Dist., Div. One. Nov. 18, 1960.]

A. F. GILMORE COMPANY (a Corporation) et al., Appellants, v. COUNTY OF LOS ANGELES et al., Respondents.

(Two Cases.)

Holbrook, Tarr & O'Neill, W. Sumner Holbrook and Francis H. O'Neill for Appellants.

Harold W. Kennedy, County Counsel, and Alfred Charles DeFlon, Deputy County Counsel, for Respondents.

FOURT, J.—This is an appeal from certain judgments in actions tried jointly with reference to certain taxes and assessments.

The appellants filed actions wherein they sought recovery of taxes paid under protest. A. F. Gilmore Company, a corporation; Gilmore Land Company, a corporation, will hereinafter be referred to as Gilmore; Columbia Broadcasting System, Inc., a corporation, will be referred to as C.B.S., and the remaining plaintiffs and appellants by the last names. The property in question is located in the county of Los Angeles and is generally bounded by Beverly Boulevard on the north, Fairfax Avenue on the west, Third Street on the south and by a line about 100 feet west of Gardner Street. A map showing the assessor's parcels thereof, the various ownerships, and the assessed value per square foot upon the surrounding properties is set forth in the footnote.[1]

No complaint is made as to the assessments on Parcels 3-1, 3-2 and 3-3, owned by Gilmore, and Parcels 1-1 and 2-1 owned by C.B.S.

The questions of law and fact are substantially the same as to all of the parties and therefore what is stated with reference to one is substantially true as to the others.

Appellants contend that the assessor in assessing the properties did so illegally and improperly. A protest was made and a hearing was had before the County Board of Equalization, hereinafter referred to as the board. The protests in effect asserted that the board had arbitrarily, discriminatorily and fraudulently refused to reduce appellants' *land* assessments. The board conducted a hearing, evidence was introduced and the board made its determination.

| Parcel | Use | Assessed Value | Board's Determination | Percent of Reduction | Square Foot Value as Equalized |
|---|---|---|---|---|---|
| GILMORE | | | | | |
| 3-6 | Farmer's Market and Parking | $770,000 | $755,000 | 3% | 93¢ |
| 3-9 | Bank | 35,000 | 32,000 | 8% | $1.02 |
| 3-8 | Gilmore Home | 27,000 | 25,200 | 7% | 38¢ |
| 3-5 | Farmer's Market Annex | 96,000 | 89,000 | 7% | 93¢ |
| 3-4 | Parking | 48,000 | 42,000 | 12½% | 67¢ |
| 3-7 | Home | 11,400 | 11,000 | 4% | 38¢ |
| 2-5 | Ball Park | 170,000 | 160,000 | 3% | 63¢ |
| C.B.S. | | | | | |
| 1-2 | T.V. City and Parking | 409,000 | 389,000 | 3% | 74¢ |
| 2-2 | Parking | 150,000 | Denied | | 68¢ |
| CORD | | | | | |
| 4-4 | Pan Pacific Aud. and Parking | 469,000 | 460,000 | 2% | 66¢ |
| 5-1 | Vacant | 440,000 | 435,000 | 1% | 68¢ |

There is no evidence of actual fraud in any respect. Our system of taxing of properties of the character herein involved

is contained largely in the Constitution and the Revenue and Taxation Code. All property must be taxed in proportion to its value. California Constitution, article XIII, section 1. The assessor must assess all taxable property in the county (with certain exceptions with which we are not here concerned) to the person who owns, possesses, claims or controls it at 12 noon on the first Monday in March. California Constitution, article XIII, section 8; Revenue and Taxation Code, section 405. The assessor has until the first Monday in July to ascertain the persons, fix the valuation and make his assessment.

Except as otherwise provided, taxable property must be assessed at its "full cash value." California Constitution, article XI, section 12; Revenue and Taxation Code, section 401. Revenue and Taxation Code, section 110, defines the terms, value, full cash value and cash value as meaning "the amount at which property would be taken in payment of a just debt from a solvent debtor."

In *De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 561-562 [290 P.2d 544] the court said:

"The standard of valuation prescribed by the Legislature is that, '[A]ll taxable property shall be assessed at its full cash value.' (Rev. & Tax. Code, § 401.) 'Full cash value,' as defined in section 110 of the Revenue and Taxation Code, 'means the amount at which property would be taken in payment of a just debt from a solvent debtor.' It provides, in other words, for an assessment at the price that property would bring to its owner if it were offered for sale on an open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other. It is a measure of desirability translated into money amounts (see Brandeis, J., concurring in *Missouri* ex rel. *Southwestern Bell Tel. Co.* v. *Public Service Com.,* 262 U.S. 276, 310 [43 S.Ct. 544, 67 L.Ed. 981]), and might be called the market value of property for use in its present condition. Indeed, section 401 of the Revenue and Taxation Code as originally enacted (Pol. Code, § 3627) contained the words 'market value' as the standard for valuation of the stock of domestic corporations, and after 'market value' was deleted in 1881 (Stats., 1881, ch. LIII, p. 57), this court stated that the term had been synonymous with 'full cash value.' (*Crocker* v. *Scott,* 149 Cal. 575, 585 [87 P. 102] ; see also *San Francisco Nat. Bank* v. *Dodge,* 197 U.S. 70, 79 [25 S.Ct. 384, 49 L.Ed. 669].)"

The court further said in *Rittersbacher* v. *Board of Supervisors of Los Angeles County,* 220 Cal. 535, 543-544 [32 P.2d 135] as follows:

". . . It is the assessor's recognized duty to see that the valuation placed on the various kinds of property shall be in proportion to the worth of such properties. If it is proportional and all are treated alike, no one contends that the taxpayers must be charged a full hundred per cent, for such is not required by the law. It is also recognized that the assessment on personal property shall be on a basis which is fair to the owners of real property so that neither shall suffer to the advantage of the other."

The assessor may consider uses or purposes for which the land is adapted even though it is not presently used for such purposes. (*Wild Goose Country Club* v. *County of Butte,* 60 Cal.App. 339 [212 P. 711]; *H. W. Pierce, Inc.* v. *County of Santa Barbara,* 40 Cal.App. 302, 306 [180 P. 641]; *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546.)

The county board is made up of the members of the Board of Supervisors. (Cal. Const., art. XIII, § 9.) The board is not bound by the technical rules of evidence; however it acts in a judicial capacity and can make its orders only on the basis of legal evidence. (*Rancho Santa Margarita* v. *County of San Diego,* 135 Cal.App. 134 [26 P.2d 716]; *Universal Consolidated Oil Co.* v. *Byram,* 25 Cal.2d 353 [153 P.2d 746].) The board's determination of the facts cannot be set aside unless the determination is fraudulent, arbitrary, an abuse of discretion or the board failed to follow the standards prescribed by the Legislature. (*McClelland* v. *Board of Supervisors,* 30 Cal.2d 124, 129 [180 P.2d 676]; *Eastern-Columbia, Inc.* v. *County of Los Angeles,* 70 Cal.App. 2d 497, 503 [161 P.2d 407]; *Bank of America* v. *Mundo,* 37 Cal.2d 1, 5 [229 P.2d 345]; *De Luz Homes, Inc.* v. *County of San Diego, supra,* 45 Cal.2d 546, 564.) The board's determination on a question of law is always subject to review. (*Flying Tiger Line, Inc.* v. *County of Los Angeles,* 51 Cal.2d 314, 320 [333 P.2d 323].)

The issue before a reviewing court is whether there was substantial evidence before the board upon which its determination could have been founded. The inquiries which the board makes are: (1) What is the fair market value of the property in question; and (2) whether the assessed value

thereof is equal to the product of fair market value and the ratio of assessment values to fair market value prevailing generally throughout the county. See *Wild Goose Country Club* v. *County of Butte, supra,* 60 Cal.App. 339, 343.

■ The determination of the board will not be rejected by the reviewing court if there is in the record substantial evidence to support the board's determination. Any evidence which tends to prove fair market value or the ratio of assessment values to market values would be relevant but all relevant evidence is not necessarily substantial. In 89 University of Pennsylvania Law Review 1026, it is stated:

". . . [T]he term 'substantial evidence' should be construed to confer finality upon an administrative decision on the facts when, upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable man, acting reasonably, *might* have reached the decision; but, on the other hand, if a reasonable man, acting reasonably, *could not* have reached the decision from the evidence and its inferences then the decision is not supported by substantial evidence and should be set aside. . . ." (89 U. of Pa. L. Rev. 1026, 1038.)

In *City of Los Angeles* v. *County of Mono,* 51 Cal.2d 843, 852 [337 P.2d 465] the court held in effect that an expert's opinion of market value under the circumstances constituted substantial evidence thereof.

■ In this case the appellants' expert witness testified that in his opinion the market value of the interior parcels as of March 1, 1957, was computed upon the basis of $1.50 per square foot. He also stated that the ratio of assessed value to market value was 26 per cent and that the assessment value of the interior parcels should have been .39 cents per square foot. The witness based his opinion in part at least as to the interior parcels upon a 1950 option agreement price for parcel 2-5 in the amount of $1.35 per square foot. He further indicated that the market value of the property had not gone up from 1950 to 1957. He also considered a 1953 condemnation award of $1.75 per square foot.

Deputy Assessor Goldman testified that in his opinion the market values of the interior parcels ranged from $2.80 to $3.00 per square foot. The opinions of both experts with reference to the frontage assessments were substantially the same.

The board seemingly preferred and accepted the opinion of the assessors' witness to that of the witness of the appellants

and this the board was entitled to do. (*City of Los Angeles* v. *County of Mono, supra,* 51 Cal.2d 843, 852.)

Appellants in attempting to convince the board that the assessments were in error asserted that a comparison of the assessments in question with the assessments made on property across the street showed a variation. This is not the sole criterion to be used. One side of the street may be adapted to a very high market value use and the other side of the street to a very low market value use. In other words, it does not necessarily follow that because the property on one side of a street has a low market value, the property on the opposite side of the street must also have a low market value.

Appellants also claimed that a comparison between the 1956 assessments and the 1957 assessments on the same property in question demonstrates that the 1957 assessment is invalid. There is no merit to the claim.

Appellants' next contention is that properties which are similarly used should be similarly assessed. All land upon which tomatoes are grown is not the same; one parcel may be good for that purpose and that purpose only and another parcel upon which tomatoes are presently grown may be very suitable for an extensive shopping center, and therefore have a very different market value, and hence be assessed accordingly.

The last method used by appellants to test the assessments was to compare the assessed values as a percentage of the fair market value of the property assessed. Appellants assert that the ratio of assessed value to market value in Los Angeles County in 1957 was 26 per cent; that the fair market value of the interior parcels should be computed at the rate of $1.85 per square foot because that was the rate applied in an eminent domain verdict in 1953 with reference to property immediately adjacent on the east to the property here in question; and that therefore the assessed value of the interior parcels should have been .48 cents per square foot. Assuming that the ratio of assessed value to market value in 1957 was 26 per cent, it does not necessarily follow that a condemnation verdict in 1953 conclusively establishes the market value of the property in question in 1957.

Goldman stated that the fair market value on the tax date of 1957 was $2.80 to $3.00 per square foot. Using the 26 per cent assessment ratio, assessments from .728 cents to .78 cents per square foot would result from Goldman's valuation.

The assessments for the interior parcels were at .69 cents per square foot.

The judgments are and each is affirmed.

Lillie, J., concurred.

Wood, P. J., concurred in the judgment.

Appellants' petition for a hearing by the Supreme Court was denied January 10, 1961.