**TODD SHIPYARDS CORP. v.
UNITED STATES.**

No. 48916.

United States Court of Claims.
Nov. 7, 1950.

808

Dwight H. Austin, Houston, Tex. (Liddell, Austin, Dawson & Huggins, Houston, Tex., on the briefs), for plaintiff.

John R. Franklin, Washington, D. C. and H. G. Morison, Assistant Attorney General, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff sues to recover $178,281.56 alleged to be reimbursable items of cost incurred for and incidental to the performance of six cost-plus-a-fixed-fee contracts entered into with defendant through the United States Maritime. Commission, and for a reasonable sum to cover costs and attorneys' fees incurred in bringing this suit. The sum of $156,250 represents capital stock taxes paid by plaintiff for five years commencing in 1941; $17,553.89 represents attorneys' fees paid by plaintiff for the defense of lawsuits during the course of the contracts; $4,443.87 represents a judgment paid by plaintiff in the Fatheree case, plus $33.80 court costs, the judgment being for liquidated damages awarded in addition to overtime wages previously paid as a result of a suit under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. Plaintiff alleges that $25,000 represents a reasonable fee for its attorneys in bringing and prosecuting suit in this court to collect the above items of alleged reimbursable costs, and asks that the court award this amount as a further item of cost alleged to be properly allowable under the terms of its contracts.

The present plaintiff is the successor in interest to Todd-Pacific Shipyards Corporation, the original plaintiff. The corporate history of plaintiff is set forth in finding 1. Beginning March 14, 1941, and ending August 3, 1944, plaintiff's predecessor, hereinafter referred to as "Todd", entered into a series of six contracts (findings 2 through 7) whereby Todd agreed to construct for and deliver to defendant at Houston, Texas, certain ships upon a cost-plus-a-fixed-fee basis. All the shipbuilding contracts were substantially similar in terms insofar as material to this suit.

Generally the contracts obligated defendant to pay to Todd the entire cost of performing the contracts, plus a fixed fee in each case which would vary inversely in proportion to the number of man-hours consumed in constructing each vessel. Each contract conditionally provided for partial payments of costs and fees to be made to

Todd as the work progressed, and unconditionally provided that the defendant would pay all balances due Todd within six months after delivery of the last vessel.

With respect to costs which would be reimbursable the contract provided in Article 7A that, in general, such costs were to be determined in accordance with the rules and regulations for determining costs issued by the Commission, entitled "Regulations Prescribing Method of Determining Profit, Adopted May 4, 1939," as amended, "in so far as applicable, and (in so far as the same are not applicable) in accordance with sound accounting practice." The article then listed certain specific items to be included (without limitation) in determining costs.

### Capital stock tax claim

In Article 7A–8 of the contract it was provided that there should be included in determining a contractor's costs, excise and other taxes as defined in paragraph 7.48 of the above mentioned Regulations. Paragraph 7.48 of the Regulations mentions specifically capital stock taxes as an includable item of cost (finding 8). During each of the years 1941 through 1945, Todd duly filed a capital stock tax return with the Collector of Internal Revenue at Austin, Texas, for each year ending with June 30, and paid taxes at the rate of $1.25 for each thousand dollars of declared value. In the instructions accompanying the returns for those years, the taxpayer was advised that it might exercise its unrestricted judgment and discretion in determining its declared value, and that consideration should be given to the corporation's net worth, its earning power, and any other factors deemed by the taxpayer to be pertinent. The taxpayer was warned that care should be exercised in arriving at a declared value since that value would be the measure not only of the capital stock tax due, but would also be a prime factor in determining the declared value excess-profits tax due at the end of its income-tax taxable year. The declared value excess-profits tax so referred to was a tax imposed upon the net income of a coporation for its income-tax taxable year (in plaintiff's case its income-tax taxable year ended each year on November 30) ending after the close of the tax year for capital stock tax purposes. The declared value excess-profits tax was at the rate of 6.6 per centum of such portion of the taxpayer's net income for its income-tax taxable year in excess of 10 percentum and not in excess of 15 per centum of the declared value appearing on its capital stock tax return, and further at the rate of 13.2 per centum of such portion of its net income in excess of 15 per centum of such declared value.

In 1941 the tax law then in effect provided that the declared value for capital stock tax purposes in that year would be binding upon the taxpayer for that year and the two succeeding years. Todd was incorporated in 1941 and entered into its first contracts with defendant in that year. It was accordingly necessary for Todd to arrive at a declared value figure for its first capital stock tax return which would take into account its net worth, probable earnings and other factors for 1941, 1942, and 1943. In 1942 the tax law was amended to permit taxpayers to make new declarations of value for capital stock tax purposes in each year.

The method used by Tood in arriving at a declared value for capital stock tax purposes was to estimate as nearly as possible its probable net income for its income-tax taxable year and then multiply that figure by ten. This method of establishing declared value was in general use by business corporations and was in accordance with sound accounting practice. If a taxpayer's estimate of its probable net income was approximately in accord with its actual net income earned during its income-tax taxable year, this method of multiplying the estimated figure by ten was calculated to avoid the imposition of the declared value excess-profits tax.

In 1941 Todd, faced with the necessity of declaring a value for capital stock and declared value excess-profits tax purposes that would serve for three years, estimated that its net income would be in the neighborhood of $3,100,000 and multiplying this figure by 10, it declared a value on its capi-

tal stock tax return for that first year of $31,000,000 and paid a capital stock tax of $38,750. The Todd corporation was formed in 1941, and Todd anticipated that it would have little net income for that year. If it had known that it was not to be bound for three years by the value declared in 1941, Todd would have declared a much lower value. Todd's actual net income for 1941 was only $33,000 and the capital stock tax on that figure, had it been used as a basis and then multiplied by 10, would have been only $412.50, instead of the $38,750 which it paid.

In 1942 Todd made a new valuation and its actual net income of $1,790,370.77 was very close to its estimated net income of $1,800,000. In that year Todd paid a capital stock tax which was only slightly more than it would have paid had it guessed what its exact net income was to be.

In 1943 Todd estimated that it would have a net income of $3,200,000. Its actual net income for that year was $4,067,294.89. Based on a declared value of $32,000,000 ($3,200,000 × 10), Todd's actual net income was in excess of 10 per centum of such declared value and it was obliged to pay an excess-profits tax of approximately $57,241. In 1944 Todd again declared too low a value and as a result paid $112,479 in excess-profits taxes for that year.

In 1945 Todd expected that certain renegotiation proceedings then in progress would be completed during its income-tax taxable year ending on November 30, and that as a result of those proceedings certain additional fees would be awarded. Todd, in declaring a value for capital stock tax purposes for 1945, accordingly took into account those additional fees and estimated that its net income for 1945 would be approximately $2,400,000 and declared a value of $24,000,000. It so happened that the renegotiation proceedings were not completed until early in 1946 and although some $3,600,000 in additional fees were actually awarded to Todd, such fees were not a part of Todd's net income for 1945 and accordingly Todd paid a capital stock tax for that year that was much higher than it would have been had Todd declared a lower value-

ue which did not take into account fees actually received in 1946. In finding 9, there is set forth a table showing Todd's declared values for the five years in question based on its estimated net earnings in column 1. In column 2 we have set forth what the declared value would have been had Todd been able to use its actual net earnings as a basis. In columns 3 and 4, respectively, are the capital stock taxes actually paid by Todd, and taxes that would have been paid had the figures in column 2 been used as declared value in its capital stock tax returns.

Todd was solely engaged in the work of performing its contracts with defendant during the years 1941 through 1946, and it accordingly claimed reimbursement for the full amount of capital stock tax paid in each year. In each case Todd's claim was denied by the Construction Audit Section of the Maritime Commission because the amounts claimed were in excess of the amount authorized by a document known as Instruction No. 52. None of the capital stock tax paid by Todd totaling $156,250 has been reimbursed by defendant, and Todd's appeals from the disallowance of its claims were denied.

Instruction No. 52 referred to above, was issued on October 15, 1942, by the Acting General Auditor of Construction for the Maritime Commission, Division of Finance, and was directed to all auditors of the Construction Audit Section. This document informed the auditors of the extent to which capital stock taxes paid by cost-plus-a-fixed-fee contractors should be reimbursed, and was apparently formulated pursuant to a decision of the Comptroller General (No. B-25432, June 9, 1942, 21 Comp. Gen. 1103). The pertinent langauge of the Instruction is set forth in finding 12. In general it advised auditors that in the case of a newly formed corporation, such as Todd, where a history of "reasonable stock valuation" did not exist, the amount of capital stock tax actually paid which might be taken into account by the auditors in determining the contractor's reimbursable costs should be based upon the "actual net worth as determined by the Commission

as of the declaration date, the actual net worth being paid-in capital, paid-in surplus, and undistributed earned surplus after proper allowance for all taxes and after elimination of intangibles in excess of actual or recoverable values." It concluded by stating that "Any tax paid as a result of a declaration in excess of the amount determined by the applicable method outlined above should be deemed as excessive and disallowed." Todd was furnished with a copy of Instruction No. 52 on or about December 8, 1942. Todd consistently refused to report as declared value on its capital stock tax returns, figures arrived at in accordance with the formula set forth in the Instruction, and refused to accept from defendant payment of amounts which would have represented its capital stock taxes had such a valuation been employed. The table appearing in finding 13 shows the declared value arrived at by using the formula in Instruction No. 52, the capital tax due on such a value, and the declared value excess-profits tax that would have been due had such values actually been used by plaintiff on its capital stock tax returns for the years in question.

Plaintiff urges that it is entitled to be reimbursed for the capital stock taxes paid in connection with the contracts in question, under Article 7A–8 of the contract and under paragraph 7.48 of the Regulations, incorporated by reference into the contract; that there was no limitation or qualification in the contracts or in the regulations with respect to defendant's promise to reimburse such excise taxes; that the formula for arriving at declared value set forth in Instruction No. 52 was never made a part of the contracts or the regulations and that the Internal Revenue Laws and Treasury Regulations then in effect gave plaintiff the unrestricted right to declare such value as it alone determined, citing North American Aviation, Inc., v. United States, 67 F.Supp. 1007, 107 Ct.Cl. 69.

Defendant attempts to distinguish the present case from the North American case. It argues that paragraph 7.23 of the Regulations made a part of plaintiff's contracts, limits the reimbursability of payments made by contractors to those which meet the test of reasonableness. Paragraph 7.23 provides as follows:

"Unreasonable Charges.—Excessive or unreasonable payments, whether in cash, stock, or other property shall not be taken into account. In computing the ship-builder's profit, no salary of more than $25,000 per year to any individual shall be considered as a part of the cost of building the ship or group of ships. All subcontracts, regardless of the amount involved, are subject to the provision that the Commission shall scrutinize construction costs to determine that they are fair, just, and not in excess of a reasonable market price for commodities or goods or services purchased or charged."

Defendant concedes that the values arrived at by Todd in its declared value capital stock tax returns were fairly arrived at and were entirely proper for the purposes of the tax itself, and that the method (estimated net income × 10) used by Todd was in accordance with sound accounting practice from Todd's point of view as a taxpayer. However, defendant argues that under the above quoted paragraph 7.23, the Commission is vested with discretion to determine the reasonableness of the amount of such tax paid by contractors and that the Commission has accordingly set forth its test of reasonableness in Instruction No. 52, which was given to plaintiff by defendant in December 1941. Defendant further concedes that it has no right to withhold reimbursement of the taxes in accordance with the formula prescribed in Instruction No. 52, unless paragraph 7.23 of the Regulations gives defendant such right. We are of opinion that paragraph 7.23 has no reference whatever to taxes but rather refers to the costs of goods and services. Paragraph 7.48 (finding 8) sets forth those taxes which are reimbursable and those which are not, and states that capital stock taxes paid by a contractor *are* reimbursable. Furthermore, the contract itself in Article 7A–8 *specifically* provides that excise taxes paid are reimbursable costs, and Article 7B provides that the exclusions required by paragraph 7.23 of the Regulations shall be observed *unless otherwise*

*specifically provided* in the contract itself. Thus, we conclude that the contract and the regulations unequivocally promise that plaintiff will be reimbursed for capital stock taxes paid, and paragraph 7.23 of the Regulations in no way modifies that promise. If the Maritime Commission believed, as it apparently did, that it should not have to refund all the capital stock taxes paid as a result of declarations made in the customary manner of business corporations and in accordance with Treasury Regulations, it would have been a simple matter to have so provided in its contract or in the Regulations. Instruction No. 52 had no connection with either, but merely reflected a policy of the Commission, pursuant to a ruling by the Comptroller General, and whether the plaintiff did or did not have notice of this policy has no bearing on its rights under the contract. Aside from the fact that plaintiff did not use the formula prescribed in the Instruction (which we assume the Commission believed to be reasonable) in arriving at a declared value, there was nothing unreasonable about the values actually declared by plaintiff in its tax returns. The purposes of the statutory provisions relating to the capital stock tax and the companion provisions relating to the declared value excess-profits tax have been dealt with at length on a number of occasions by this court. Chicago Telephone Supply Co. v. United States, 23 F.Supp. 471, 87 Ct.Cl. 425; Allied Agents, Inc., v. United States, 26 F.Supp. 98, 88 Ct.Cl. 315; Servel, Inc., et al. v. United States, 35 F.Supp. 466, 92 Ct.Cl. 159; North American Aviation, Inc., v. United States, supra. See also Haggar Co. v. Helvering, 308 U.S. 389, 60 S.Ct. 337, 84 L.Ed. 340. As a revenue-producing tax, the capital stock tax was a sure thing, and in order to insure a sufficient payment of tax to the Government and fair treatment to all taxpayers, the declared value excess-profits tax was imposed as a companion tax or sort of penalty for making too low a declaration on the capital stock tax return. Thus, the two taxes were self-adjusting. While it is conceivable that a taxpayer, operating under a cost-plus-a-fixed-fee contract with the Government, providing for the reimbursement of capital stock taxes actually paid, might unduly inflate its declared value and unnecessarily insure itself against the payment of declared value excess-profits tax, there is nothing unduly inflated about the values declared by Todd in this case. In fact, Todd was required to pay declared value excess-profits taxes for two years (1943 and 1944) in an amount in excess of the amount for which it seeks reimbursement as capital stock taxes, and if the fees awarded on the renegotiation proceedings terminating in 1946 had, as Todd expected, been awarded in 1945, Todd might have had to pay some declared value excess-profits tax for that year. The value declared in 1941 was not unreasonable in view of the fact that at the time the return was filed, Todd was required to use the same valuation for three years. In 1942, Todd just escaped the imposition of declared value excess-profits tax. We find nothing in the circumstances of this case to indicate that Todd would have arrived at a lower figure for declared value in any of the years in question if capital stock taxes had *not* been a reimbursable item of cost. There appears to be no real difference between this case and the situation presented in the North American case, and we conclude, as we did in that case, that there was nothing in the contracts (or in the regulations) nor was there anything unreasonable in Todd's treatment of its capital stock tax matters which relieved the defendant of its duty to reimburse Todd for the full amount of the taxes paid. Plaintiff is accordingly entitled to recover $156,250 on this claim.

Legal fees and expenses paid by Todd in connection with the performance of the contracts

Between June 1, 1946, and March 31, 1948, Todd incurred and paid legal fees of $17,320.45 plus court costs and expenses of $233.44, in defending certain suits for overtime pay under the Fair Labor Standards Act. Defendant had reimbursed Todd the cost of all similar legal services and expenses rendered prior to June 1, 1946, but refused to reimburse it for the instant legal expenses. The employment of the attor-

neys and the rates charged by them to Todd had been specifically authorized and approved by defendant prior to the rendering of the services and the incurring of the charges. Article 7A–4 of Todd's contracts (finding 14) provided that the actual net cost to the contractor of reasonable legal fees specifically approved by the Commission, was reimbursable to the contractor. Paragraph 11 of the same article further provided that general administrative and operating expenses of the contractor incurred in the performance of the contract, were reimbursable to the extent approved. Todd's claim for these fees were turned down on the ground that some of the litigation had not been finally disposed of at the time Todd presented its vouchers for the fees. All pertinent claims were finally concluded and the Commission was so advised. Defendant does not seriously contest Todd's right to recover for this item of legal fees and incidental expenses and there is no dispute as to the services rendered, the reasonableness of the fees, nor the fact that the provisions of the contract relating to the reimbursability of such expenses have been complied with. We accordingly conclude that plaintiff is entitled to recover $17,553.89 on these two claims.

#### Judgment for liquidated damages in Fatheree litigation

In February 1946, one C. O. Fatheree and several other ex-employees brought suit against Todd on behalf of themselves and approximately 700 other firemen and guards to recover amounts equal to their overtime wages as liquidated damages alleged to be due under the Fair Labor Standards Act. The overtime in suit was the time spent between 1941 and 1945 before their regular work shifts receiving instructions for the day, and time walking to their assigned posts. In the spring of 1945 all members of this class were paid their audited actual overtime for such preliminary activities totaling $141,634.06. This amount was paid to employees with the prior authorization of the Commission, but no other amount was paid them as liquidated damages under the Fair Labor Standards Act. On March 19, 1947, the District Court of Harris County, Texas, rendered a judgment against Todd in favor of some of the litigants for $4,443.87 plus $33.80 court costs and denied recovery as to all others. The Labor Law Counsel of the Maritime Commission authorized the payment of this judgment by Todd, and the Regional Auditor of Construction of the Commission promised reimbursement. The Washington Labor Relations Advisor of the Commission was apparently of the opinion that the Labor Law Counsel should not have authorized reimbursement of this claim and the Review Board of the Maritime Commission rejected the claim on the ground that in not having paid the overtime wages for the above-mentioned preliminary activities of firemen and guards, Todd failed to exercise ordinary business prudence. Defendant concedes that if this court should find that Todd exercised ordinary business prudence in not paying such reporting time to its employees between 1941 and 1945, plaintiff is entitled to recover on this claim.

Prior to the fall of 1944, such preliminary activities were not considered compensable work time by industry generally and by shipyards in particular. As a result of the Supreme Court's decision in the case of Tennessee Coal, Iron & R. Co. v. Muscoda Local, No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949, much doubt was cast upon the question. That doubt was finally resolved in favor of the employees seeking such compensation by the decision, in the summer of 1946, in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515.

■ Defendant concedes that in not paying its employees for such preliminary activities during the years in question, Todd was following the generally accepted practice of industries and of the Commission's other shipyards and that all this was known to the Commission at all times. It appears probable that the Commission would certainly have refused reimbursement of such overtime pay had Todd, contrary to the practice in other industries, paid for preliminary activities. On the record and in view of the circumstances we think that

Todd exercised sound business judgment in not considering such time compensable from 1941 to 1945 and in not then paying therefor. Accordingly, under Article 7A–2 of its contract with the Commission, Todd was entitled to be reimbursed for the amount of the judgment and court costs. Article 7A–2 provides that the contractor shall be reimbursed for

"The actual cost of all labor properly chargeable to the construction and protection of the vessels, the * * * operation and protection of the Facilities and the premises on which they are constructed, including piece work and incentive bonuses, bonuses to shift workers, overtime pay, pay for lunch periods and for vacations if actually paid by the Contractor."

Plaintiff is entitled to recover $4,477.67 on this claim.

Claim for reasonable attorneys' fees for services rendered in connection with the instant case in this court

Plaintiff and its predecessors in interest employed the law firm of Liddell, Austin, Dawson & Huggins, to litigate by this suit Todd's claims against defendant under the contracts, totaling $178,281.56, and have agreed to pay the attorneys a reasonable fee for their services, which fee plaintiff alleges is allowable under the terms of their contracts. Defendant contends that plaintiff is not entitled to recover on this claim because of this court's general rule that attorneys' fees are not allowable in suits against the United States in the absence of express statutory authority; that the Maritime Commission has not given authorization for the representation of counsel or the bringing of this action as required by Article 7A–4 of the contract, and that whatever excuse for the claim may be found in paragraph 7.46 of the Regulations is dissipated by the fact that the regulation is a permissive one, and that in any event the purpose for which such costs may be taken into account appears to have been in connection with determining the contractor's allowable profit under contracts entered into pursuant to the authority of the Merchant Marine Act of 1936, 46 U.S.C.A. §

1 et seq., an act entirely unrelated to this action.

Paragraph 7.46 of the Regulations referred to herein and made a part of the contracts in suit by reference, provides as follows:

"Legal and accounting fees in connection with the prosecution of claims against the United States (including income tax matters) may not be taken into account, but reasonable legal and accounting fees, other than contingent fees, properly incurred by the contactor or subcontractor in litigation of claims against the United States under a contract with the Commission or a subcontract under a contract with the Commission, in cases where by adjudication or settlement the validity of the contractor's or subcontractor's claim is established, may be taken into account."

■■■ If there is any justification for the allowance of a reasonable fee to attorneys for the bringing and prosecution of this lawsuit, it must be found in the above quoted paragraph of the Regulations. Manifestly, paragraph 4 of Article 7A of the contract itself providing for the reimbursement of legal "fees specifically approved by the Commission," does not refer to a suit against the United States under a contract with the Commission such as this. Paragraph 7.46 of the Regulations, however, appears to us to describe exactly the situation here presented and sufficient under pertinent statutes to authorize our consideration of a reasonable attorney's fee as part of plaintiff's costs. But defendant says that even if the Regulations are authoritative, the authority for them stems from the Merchant Marine Act of 1936 which is entirely unrelated to this action. In this connection, we note that the defendant in arguing its position on the capital stock tax claim, relied upon the authority of paragraph 7.23 of the same Regulations. Paragraph 1 of the preamble to the contracts in suit provides that the agreements contained in the contracts are entered into pursuant to the provisions of "an Act approved February 6, 1941 (Public No. 5, 77th Congress)." This Act is found at 46 U.S.C.A.

§§ 1119a and 1119b and provides for emergency cargo ship construction (see also 55 Stat. 5 and 6). Section 1119b provides that "the provisions of section 1117 of this title [§ 207 of the Merchant Marine Act, 1936] and the Act of October 10, 1940, ch. 838, 54 Stat. 1092, shall apply to all the activities and functions which the Commission is authorized to perform under section 1119a of this title * * *." Section 1117 of Title 46 U.S.C.A. § 207 of the Merchant Marine Act, 1936, provides that the "Commission may enter into such contracts, upon behalf of the United States, and may make such disbursements as may, in its discretion, be necessary to carry on the activities authorized by this chapter * * * in the same manner that a private corporation may contract within the scope of the authority conferred by its charter." In Standard Oil Co. of California v. United States, D.C., 59 F.Supp. 100, affirmed, 9 Cir., 156 F.2d 312, the court held that the War Shipping Administration had the power to create by contract a liability against the United States for all provable damages including attorney's fees because the Administration was granted the power to enter into contracts in the same manner as private corporations and to bind the United States by the terms of such contracts. At page 106 of 59 F.Supp. the court concluded, "When attorney's fees are made by agreement an element of damages, I see no logical reason why the United States should not be liable therefor to the same extent as a private party. It has assumed the liability of an ordinary carrier and should not be permitted to evade it." Thus in the instant case, we have statutory authority for the Maritime Commission to contract in the same manner as a private corporation, and the contract it entered into with plaintiff provided for the payment to the contractor of reasonable attorney's fees if the contractor should have to sue to recover its costs or fees due under such contract, and the litigation was settled or adjudicated in favor of the contractor. We are of the opinion that the United States is bound by this term of the contract as it appears in the Regulations. In the cases cited by defendant there was no statutory authority for the awarding of attorney's fees. In the instant case the statute under which the contract was entered into, authorized the contracting agency to contract in the same manner as a private corporation. A private corporation may contract with respect to the payment of attorney's fees and will be bound by that contract. Clearly the Maritime Commission had authority to allow attorneys' fees in this case if plaintiff had been successful in the prosecution of its claims before the Commission. In the circumstances and for the reasons hereinbefore discussed, the authority of this court is no less than that of the Commission. We have jurisdiction to hear and determine claims arising under a valid regulation and this Regulation was promulgated as a part of the contract in suit and with full authority of law.

■ Inasmuch as we have concluded that plaintiff's claims are valid and have rendered judgment thereon favorable to plaintiff, plaintiff is accordingly entitled to a judgment for reasonable attorney's fees. The Commissioner of this court has found, and upon the evidence of record we adopt his finding, that a reasonable fee for the services of Liddell, Austin, Dawson & Huggins, in connection with the litigation of the plaintiff's claims to date, is $17,500, and plaintiff is given judgment for that amount.

The court does not, at this time, award judgment with respect to such additional attorney's fees in connection with this suit which may become due under the contracts by reason of the rendition of additional legal services in connection with further adjudication favorable to plaintiff in the United States Supreme Court, either through denial of defendant's request for a writ of certiorari (if the defendant should make such a request) or a final decision of that Court affirming the decision herein in whole or in part. In either event, plaintiff would be entitled in the circumstances to an additional award to cover the reasonable costs of such legal services and court costs,

and this court, therefore, retains jurisdiction to enter a further award in the matter of such attorneys' fees and costs upon proper cause shown.

In its petition plaintiff prays for interest on any amount awarded by this court. Section 2516 of Title 28, 62 Stat. 978, specifically provides that this court may not award interest on a claim against the United States unless such interest is provided for in the contract in suit or in an Act of Congress. We know of no statutory or contractual authority for the awarding of interest in this case and plaintiff's prayer is denied.

Plaintiff is entitled to recover on all its claims in suit (except its claim for interest), including its claim for reasonable attorneys' fees incident to the bringing and prosecution of this action to date of judgment herein, and judgment will be entered in its favor for $195,781.56. It is so ordered.

HOWELL, MADDEN, and WHITAKER, Judges, and JONES, Chief Judge, concur.